IN RE the COMMITMENT OF David J. WOLFE:
STATE of Wisconsin, Petitioner-Respondent,

v.

David J. WOLFE, Respondent-Appellant.†

Court of Appeals

*Nos. 99–2145, 00–1959. Submitted on briefs March 9, 2001.—Decided May 2, 2001.*

## 2001 WI App 136

(Also reported in 631 N.W.2d 240.)

†Petition to review denied.

On behalf of the respondent-appellant, the cause was submitted on the brief of *Ann T. Bowe* of Milwaukee.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Sally L. Wellman*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Brown, P.J., Nettesheim and Snyder, JJ.

¶ 1. SNYDER, J. David J. Wolfe appeals from the trial court order committing him to institutional care in a secure mental health facility as a sexually violent person pursuant to WIS. STAT. ch. 980. He also appeals from the order denying his motions after verdict. Wolfe argues that his trial counsel's ineffective performance requires the vacation and dismissal of the commitment order or, in the alternative, a new commitment trial. Wolfe also contends that the trial court lacked both competency to proceed and personal jurisdiction over him. We disagree with Wolfe's contentions and affirm the orders of the trial court.

## FACTS

¶ 2. Wolfe was adjudicated delinquent for a sexually violent offense and placed at the Norris Adolescent Treatment Center on February 27, 1996, for an initial period of one year. Wolfe was treated at Norris from February 1996 until July 1997. In June 1997, Wolfe was removed from the sexuality program at Norris and placed in Norris's intensive supervision unit due to lack of progress in addressing treatment issues. On July 3, 1997, Wolfe started a fire in his room at Norris and was subsequently charged with arson of a building. His placement disposition on the sexual offense was then amended to placement at Lincoln Hills School, a secure correctional facility, where he was received on July 22, 1997.

¶ 3. On September 9, 1997, Wolfe was adjudicated delinquent of arson and was placed in the Serious Juvenile Offender Program (SJOP) for five years; he was again placed at Lincoln Hills. While Wolfe's placement in SJOP will not expire until September 9, 2002,

the dispositional order on his sexual offense charge was set to expire on October 24, 1998. The State filed its WIS. STAT. ch. 980 petition on October 22, 1998, two days before the expiration of the sexual offense dispositional order, and one week before Wolfe's eighteenth birthday. Wolfe is currently being held at the Wisconsin Resource Center for an indefinite time as a sexually violent person under ch. 980.

## DISCUSSION

¶ 4. Wolfe argues that his WIS. STAT. ch. 980 commitment order should be vacated because his trial counsel provided ineffective assistance of counsel. Specifically, Wolfe argues that his trial counsel was ineffective for failing to move to dismiss the ch. 980 petition because Wolfe was not within ninety days of discharge or release as required by WIS. STAT. § 980.02(2)(ag) (1999–2000);[1] for failing to move to strike for cause two prospective jurors on the grounds of objective bias and equivocal statements of impartiality; and for failing to object to the introduction of "other acts" evidence unrelated to sexual behavior. Furthermore, Wolfe argues that the trial court lacked competency to proceed because the commitment petition was untimely filed, and lacked personal jurisdiction over him because of the lack of personal service. We reject each of these arguments. While each claim will be addressed in turn, we will first set forth the applicable standards and evaluate the claims of ineffective assistance of counsel.

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version.

## Ineffective Assistance of Counsel

■

¶ 5. There are two components of an ineffective assistance of counsel claim: a demonstration that counsel's performance was deficient and a demonstration that such deficient performance prejudiced the defendant. *State v. Smith*, 207 Wis. 2d 258, 273, 558 N.W.2d 379 (1997). Wolfe has the burden to establish both components. *Id.*

■

¶ 6. An attorney's performance is not deficient unless "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *State v. Oswald (Theodore)*, 2000 WI App 2, ¶ 49, 232 Wis. 2d 62, 606 N.W.2d 207, *review denied*, 2000 WI 21, 233 Wis. 2d 84, 609 N.W.2d 473 (Wis. Feb. 22, 2000) (No. 97–1026–CR) (citations omitted). Consequently, we gauge whether such performance was reasonable under the circumstances of the particular case. *Id.* Deficient performance is limited to situations where the law or duty is so clear that reasonable counsel should know enough to raise the issue. *Id.*

■

¶ 7. Even if deficient performance is present, we will not reverse unless Wolfe also establishes that trial counsel's deficiency in fact prejudiced his defense; counsel's errors must be so grave as to deprive him of a fair trial, a trial whose result is reliable. *Id.* at ¶ 50. In essence, counsel's errors must actually have an adverse effect on the defense; not every error that possibly could have influenced the outcome undercuts the reliability of the result of the proceeding. *Id.* There must be a reasonable probability that but for counsel's errors, the result of the proceeding would be different. *Id.*

¶ 8. Whether counsel's actions constitute ineffective assistance is a mixed question of law and fact. *Id.* at ¶ 51. We will not overturn a trial court's findings of fact, including those regarding the circumstances of the case and counsel's conduct and trial strategy, unless the findings are clearly erroneous. *Id.* However, the final determinations of whether counsel's performance was deficient and prejudiced the defense are questions of law which we decide without deference to the trial court. *Id.*

### Petition Untimely

¶ 9. Wolfe argues that his trial counsel was ineffective for his failure to move to dismiss the WIS. STAT. ch. 980 petition as untimely pursuant to WIS. STAT. § 980.02(2)(ag). Wolfe argues that while his adjudication for a sexually violent offense was set to expire on October 24, 1998, he was also subject to an SJOP adjudication until September 9, 2002. Because § 980.02(2)(ag) requires that a ch. 980 petition be filed within ninety days of discharge or release, Wolfe argues that the petition was filed too early and thus his trial counsel was ineffective for failing to so argue. We disagree.

¶ 10. To show deficient performance, Wolfe must show that his counsel's representation was objectively unreasonable. *Oswald (Theodore)*, 2000 WI App 2 at ¶ 63. WISCONSIN STAT. § 980.02(2)(ag) requires that a petition filed under WIS. STAT. ch. 980 must allege that

> [t]he person is within 90 days of discharge or release
> . . . from a secured correctional facility, as defined in
> s. 938.02(15m) . . . if the person was placed in the
> facility for being adjudicated delinquent under s.

938.183 or 938.34 on the basis of a sexually violent offense or from a commitment order that was entered as a result of a sexually violent offense.

We read § 980.02(2)(ag) to say that a ch. 980 petition should be filed within ninety days of discharge from a sexually violent offense delinquency adjudication if the person was placed in a secure correctional facility on the basis of that offense.

¶ 11. Wolfe was adjudicated delinquent of first-degree sexual assault of a child. His placement disposition on the sexual offense was originally to Norris Adolescent Treatment Center but was later amended and he was transferred to Lincoln Hills, a secure correctional facility, on July 22, 1997, before he was adjudicated delinquent of arson and placed in SJOP. Wolfe was scheduled to be discharged from the sexual offense disposition on October 24, 1998; the WIS. STAT. ch. 980 petition was filed on October 22, 1998, two days before his scheduled release from the sexual offense disposition. The ch. 980 petition was filed within ninety days of discharge from a delinquency adjudication based upon first-degree sexual assault, in compliance with WIS. STAT. § 980.02(2)(ag).

¶ 12. Wolfe argues that *State v. Keith*, 216 Wis. 2d 61, 573 N.W.2d 888 (Ct. App. 1997), necessitates the conclusion that the petition was filed too early. Keith was an adult sentenced to prison after conviction of both first- and second-degree sexual assault; Keith was later convicted of fourth-degree sexual assault and sentenced to six months consecutive to the second-degree· sexual assault count. *Id.* at 66. While first- and second-degree sexual assault are defined as sexually violent offenses by WIS. STAT. § 980.01(6), fourth-degree sexual assault is not. *Keith*, 216 Wis. 2d at 70. One day before his scheduled release from the fourth-degree sexual

243

assault charge, the State filed a WIS. STAT. ch. 980 petition alleging that Keith was a sexually violent person. *Keith*, 216 Wis. 2d at 67.

¶ 13. Keith argued that his WIS. STAT. ch. 980 petition was untimely filed because it was filed more than ninety days after he had begun to serve a consecutive sentence on a nonviolent offense. *Keith*, 216 Wis. 2d at 66. We disagreed and held that consecutive sentences constituted one continuous term of incarceration for the purpose of determining when a respondent was eligible for parole. *Id.* at 71. We concluded that a commitment petition must be filed within ninety days of release from a continuous term of incarceration, any part of which was imposed for a sexually violent offense. *Id.*

¶ 14. Wolfe argues that the same principles governing *Keith* apply here. We disagree. *Keith* addressed the issue of consecutive adult prison sentences. Here, we are dealing with juvenile adjudications and dispositions. While WIS. STAT. § 302.11(3) allows for the treatment of consecutive adult prison sentences as one continuous sentence, there is no equivalent provision for dispositions in WIS. STAT. ch. 938, the Juvenile Justice Code.

¶ 15. The Wisconsin Supreme Court has specifically rejected the "exact equation of institutional placement of a juvenile with the incarceration of an adult." *K.C. v. DHSS*, 142 Wis. 2d 906, 918, 420 N.W.2d 37 (1988). WISCONSIN STAT. § 973.15(2)(a) allows a trial court to impose "as many sentences as there are convictions and may provide that any such sentence be concurrent with or consecutive to any other sentence imposed at the same time or previously." "Sentence" is not statutorily defined but § 973.15 indicates that a

"sentence" may be imposed only for a "conviction." *State v. Woods*, 173 Wis. 2d 129, 137, 496 N.W.2d 144 (Ct. App. 1992). A "conviction" does not include a juvenile delinquency adjudication; the Juvenile Justice Code includes explicit language that the legislature did not intend that an adjudication of delinquency be treated as a criminal conviction:

> A judgment in a [juvenile delinquency] proceeding on a petition under this chapter is not a conviction of a crime, does not impose any civil disabilities ordinarily resulting from the conviction of a crime and does not operate to disqualify the juvenile in any civil service application or appointment.

WIS. STAT. § 938.35(1). Generally, juvenile delinquency proceedings are not criminal proceedings, *State v. Hezzie*, 219 Wis. 2d 848, 867, 580 N.W.2d 660 (1998), and a juvenile disposition is not a sentence. *Woods*, 173 Wis. 2d at 137. Hence, the concept of consecutive sentences is foreign in the context of juvenile adjudications and dispositions.

¶ 16. WISCONSIN STAT. § 980.02(2)(ag) states that a WIS. STAT. ch. 980 petition should be filed within ninety days of discharge from a delinquency adjudication based upon a sexually violent offense if the person was placed in a secure correctional facility on the basis of that offense. Wolfe was scheduled to be discharged from the sexual offense disposition on October 24, 1998; the ch. 980 petition was filed on October 22, 1998, two days before his scheduled release from the sexual offense disposition. The ch. 980 petition was filed within ninety days of discharge from a delinquency adjudication based upon a sexually violent offense, in compliance with § 980.02(2)(ag). Trial counsel cannot

be found delinquent for failure to move for dismissal on these grounds.

### *Jurors*

¶ 17. Wolfe argues that trial counsel was ineffective for failing to move to strike for cause two prospective jurors on the grounds of objective bias and equivocal statements of impartiality. We disagree.

### *Juror G.*

¶ 18. Wolfe argues that trial counsel should have moved to strike juror G. for cause because she "exhibited objective bias that could be inferred." During voir dire, G. revealed that she had been sexually assaulted as a young girl and, according to Wolfe, there were "striking similarities between the sexual assaults allegedly committed by . . . Wolfe and the assailant who sexually assaulted" juror G. Wolfe argues that G.'s bias could have been inferred based on the similarity of the sexual assaults and from "her curt answers throughout the record." Thus, Wolfe contends, trial counsel erred in failing to realize this inferred bias and in failing to move to strike G.

¶ 19. In July 1999, the Wisconsin Supreme Court released four opinions in which the court clarified the murky waters of juror bias jurisprudence in Wisconsin, adopting the terms "statutory," "subjective" and "objective" bias to replace the misused "implied," "actual" and "inferred" terminology. *See State v. Faucher*, 227 Wis. 2d 700, 596 N.W.2d 770 (1999); *State v. Kiernan*, 227 Wis. 2d 736, 596 N.W.2d 760 (1999); *State v. Erickson*, 227 Wis. 2d 758, 596 N.W.2d 749 (1999), *cert. denied*, 528 U.S. 1140 (2000) (No. 99–6572); *State v. Mendoza*,

227 Wis. 2d 838, 596 N.W.2d 736 (1999). A prospective juror is biased and should be removed for cause only if the prospective juror is (1) statutorily biased, (2) subjectively biased or (3) objectively biased. *Oswald (Theodore)*, 2000 WI App 2 at ¶ 17.[2]

¶ 20. In reviewing a trial court's determination of subjective and objective bias, we give two different levels of deference to the trial court's conclusions. *State v. Oswald (James)*, 2000 WI App 3, ¶ 5, 232 Wis. 2d 103, 606 N.W.2d 238, *review denied*, 2000 WI 21, 233 Wis. 2d 84, 609 N.W.2d 473 (Wis. Feb. 22, 2000) (Nos. 97–1219–CR, 97–1899–CR), *cert. denied*, 520 U.S. 1282 (2000) (No. 99–9696). First, the trial court's determination of subjective bias will be upheld unless clearly erroneous. *Id.* Second, the trial court's determination of objective bias will be reversed only if, as a matter of law, a reasonable judge could not have reached the same conclusion. *Id.* Thus, our review of a trial court's determination of both subjective and objective bias is deferential, though less so for objective bias. *Id.*

¶ 21. In the instant case, Wolfe argues that trial counsel was ineffective for failing to strike G. because "she exhibited objective bias that could be inferred." Wolfe erroneously mixes current juror bias terminology ("objective bias") with old terminology ("inferred bias"); the old terminology has outlived its usefulness and is no longer relevant. *Faucher*, 227 Wis. 2d at 706. We therefore assume that Wolfe argues that G. should have been stricken for objective bias.

¶ 22. A prospective juror is objectively biased only if a reasonable person in the prospective juror's

---

[2] Wolfe makes no argument that any juror was statutorily biased.

position could not objectively judge the case in a fair and impartial manner. *Oswald (Theodore)*, 2000 WI App 2 at ¶ 25. When determining if a juror is objectively biased, all the facts involved in the case and the facts and circumstances surrounding the voir dire must be considered. *Id*. A court's conclusion on whether a prospective juror is objectively biased is a mixed question of law and fact. *Id*. We will give weight to this conclusion during our review and will reverse it only if a reasonable judge could not have reached it as a matter of law. *Id*.

██

¶ 23. For example, courts have found objective bias when a prospective juror is related to a State's witness by blood or marriage to the third degree or if the prospective juror has a recent and continuous contact with the criminal justice system. *Id*. at ¶ 26. The prospective juror must demonstrate an ingrained attitude about the particular subject of the case and there must be a connection between the prospective juror's bias and the issues or theory of the case. *Id*. These attitudes or opinions must be strongly held but are not expected to be unequivocal. *Id*.

¶ 24. Counsel's performance was ineffective, Wolfe argues, because G. "exhibited objective bias" and counsel failed to move the court to strike her for cause. Wolfe also contends that G.'s "curt answers" implied a bias and inability to remain fair and impartial. To the contrary, after reviewing the record of voir dire and counsel's posttrial testimony, we conclude that counsel's conduct was not deficient.

██

¶ 25. An examination of *Faucher, Kiernan, Erickson* and *Mendoza* in conjunction with one another reveals that exclusion of a juror for objective bias

248

necessitates "a direct, critical, personal connection between the individual juror and crucial evidence or a dispositive issue in the case to be tried or the juror's intractable negative attitude toward the justice system in general." *Oswald (James)*, 2000 WI App 3 at ¶ 8. The Wisconsin Supreme Court has held that a prior sexual assault does not categorically preclude the victim from serving on a jury. *Erickson*, 227 Wis. 2d at 777.

¶ 26. During voir dire in open court, the trial court asked the jurors if they or anyone they knew had been the victim of a sexual assault. Several jurors answered in the affirmative and thus more specific voir dire of each individual juror who answered affirmatively took place in camera. Upon questioning by the court, G. indicated that three and one-half years earlier she had been the victim of a sexual assault. The court asked G.:

> THE COURT: Okay. Now, you understand that this is a hearing on a commitment, and there is going to be evidence presented that [Wolfe] was found to be delinquent for an offense that we refer to as first-degree sexual assault. Would the mere fact that he has been found delinquent of that type of an offense affect you in such a way as you cannot be fair and impartial?
>
> PROSPECTIVE JUROR: No.
>
> THE COURT: You could put aside your own circumstances and listen to the evidence in this case? Could you do that?
>
> PROSPECTIVE JUROR: Yeah, I could.
>
> THE COURT: Okay. Because of being a victim of that type of thing, you wouldn't be just inclined to automatically determine that someone would do something like that?

PROSPECTIVE JUROR: No.

THE COURT: In terms of the first-degree sexual assault ought to be committed?

PROSPECTIVE JUROR: No.

THE COURT: Okay. Do you have any reservations about that at all.

PROSPECTIVE JUROR: No.

G. was asked specific details about her sexual assault and asked whether she felt that she was treated fairly during the prosecution of her assailant. While G. stated that she was "not really" satisfied with the outcome of her case, she agreed that she had been treated fairly and stated that her experience would not affect her ability to be fair and impartial. G. also affirmatively stated that the age similarity of Wolfe and her assailant would not affect her in any way.

¶ 27. Assistant Attorney General Thomas Fallon then asked G. some follow-up questions about her dissatisfaction with the outcome of her case. G. stated that her dissatisfaction stemmed from the feeling that her assailant was not sufficiently punished:

PROSPECTIVE JUROR: I think he should have been in jail longer. And when he turned seventeen, the Courts said that he was an adult now, so he came to visit me again.

MR. FALLON: He did?

PROSPECTIVE JUROR: So I didn't like that.

However, G. affirmatively stated that she would not hold this dissatisfaction against either Wolfe or the State.

¶ 28. Wolfe's trial counsel did in fact then ask G. follow-up questions:

MR. VAN SKIKE: . . . If I were to tell that you [sic] David had more than one victim of sexual assault, in fact, he had lots of victims sexual assault [sic], would that change your feelings at all about this?

PROSPECTIVE JUROR: Maybe.

MR. VAN SKIKE: [If] I told you it was more than a hundred, would that change your feelings about this?

THE COURT: Well, maybe we ought to clarify? Say, for example, you do hear evidence that there were other victims of Mr. Wolfe, would that cause you to have other feelings based on your experience?

PROSPECTIVE JUROR: Not, not upon myself but just towards me?

MR. FALLON: I asked that question before.

THE COURT: It was my concern. Thank you.

MR. VAN SKIKE: Also Mr. Wolfe's victims were all the age. You would have been or younger?

PROSPECTIVE JUROR: Uh-hum.

MR. VAN SKIKE: Would this type of evidence give you concern as far as your ability to be fair and impartial?

PROSPECTIVE JUROR: No.

. . . .

THE COURT: You're satisfied then you could be fair and impartial?

PROSPECTIVE JUROR: Yeah.

¶ 29. After reviewing the voir dire record, two things are apparent. First, G. expressed numerous times that she would not let her past experience affect her ability to remain fair and impartial. Second, the record reveals substantial questioning and dialogue

between G., the court, the prosecution and defense counsel. Wolfe's trial counsel sought clarification of G.'s opinions by asking follow-up questions. He conducted careful questioning about G.'s past experience; his performance cannot be categorized as deficient in this respect. As for G.'s alleged "curt" responses, the trial court is in "a far superior position to ascertain bias than is an appellate court whose only link to the voir dire is through the 'bare words on a transcript' of the proceedings." *Erickson*, 227 Wis. 2d at 775 (citation omitted). The trial court is better equipped to determine if a juror's response is sincere. *Oswald (James)*, 2000 WI App 3 at ¶ 19.

¶ 30. At the posttrial evidentiary hearing on the issue of trial counsel's performance, Wolfe asked trial counsel Russell Van Skike why he did not move to strike G. for cause; Van Skike stated, "I didn't feel there was any reason to believe that she was an inappropriate juror. As far as Ms. G[.] goes, the reality of that situation is [Wolfe] asked that she be allowed to stay on the jury." Van Skike stated that Wolfe had informed co-defense counsel June Spoerl that he liked G. "or some words similar to that, so at that point we left her on the panel." Van Skike stated that he was not concerned about the impact of her prior sexual assault because

> I think she answered the questions candidly. She was very alert. She did indicate, obviously, quite bluntly that she had been the victim; that there were things in her past that could have been a problem, but she thought she could put all of those aside and make a fair decision in this case.
> She kept eye contact with David. She was very appropriate I guess is the right word in her body

language and motions. At that point there wasn't any reason to doubt that she couldn't set these feelings aside, and with David's indication at that point that he wanted her on the panel, at least at that stage, we left it at that.

Whether trial counsel should move the court to strike a juror for cause is his or her tactical decision to make. *Oswald (Theodore)*, 2000 WI App 2 at ¶ 63. We conclude that defense counsel's decision not to move to strike G. was a reasonable, tactical decision and does not constitute deficient performance, particularly in light of Wolfe's desire that she remain on the jury.

*Juror B.*

¶ 31. Wolfe argues that trial counsel should have moved to strike juror B. "who made equivocal statements of impartiality." B.'s fourteen-year-old daughter had been sexually assaulted two years earlier and Wolfe maintains that she gave "equivocal answers to many voir dire questions" when asked if she could set aside that prior incident. According to Wolfe, trial counsel's failure to strike B. for cause constituted ineffective assistance of counsel and thus deprived him of a fair and impartial jury.

¶ 32. Wolfe does not specify if B. should have been stricken for objective or subjective bias. We need not consider an argument that is inadequately developed. *Vesely v. Sec. First Nat'l Bank of Sheboygan Trust Dep't*, 128 Wis. 2d 246, 255 n.5, 381 N.W.2d 593 (Ct. App. 1985). However, we will note that it would be inappropriate to strike B. simply because she provided equivocal answers. We have repeatedly stated that a prospective juror need not give "unequivocal assur-

ances" of his or her ability to remain completely impartial. *Oswald (James)*, 2000 WI App 3 at ¶ 19.

¶ 33. B. stated that she was satisfied with the prosecution of her daughter's assailant and that her experience would not affect her ability to be fair and impartial. B. admitted some trepidation:

> I'm trying to decide. I mean I do believe everybody, you know, is different, and I'm a pretty, you know, impartial person. I usually like to see everybody's side of it, but I don't know, you know. I mean if something is said, I don't think so. I think I would be. I don't know.

But again, a prospective juror need not respond to voir dire questions with "unequivocal declarations of impartiality." *Erickson*, 227 Wis. 2d at 776. In fact, we expect a juror's honest answers to be, at times, less than unequivocal. *Id.*

¶ 34. Wolfe's trial counsel stated that he did not move to strike B. for cause because

> [a]t the point that we stopped the voir dire with her, I also thought that she had been quite candid or open with the Court and with us about her feelings; that at least at that point she was still appropriate to leave on the panel. I think sometimes too many jurors respond routinely and raise their hand and say, yes, I can do this, yes, I can do this, but at least this juror took the time to reflect and think about those things. I understand it put her in an awkward position of having to deal with some past memories or family experiences, but, on the other hand, she responded to the Court's questioning saying that she believed she could put those things aside and make a fair decision.

We cannot state that trial counsel's decision not to request that the court strike B. for cause was deficient.

### *"Other Acts" Evidence*

¶ 35. Wolfe argues that trial counsel was ineffective in failing to object to the introduction of "other acts" evidence, evidence unrelated to his sexual behavior. During Wolfe's WIS. STAT. ch. 980 commitment trial, the State introduced evidence of his arson adjudication and his misconduct while at Norris Adolescent Treatment Center. Wolfe argues that this "other acts" evidence was prohibited by WIS. STAT. §§ 904.03 and 904.04. We disagree.

¶ 36. Again, Wolfe must establish that trial counsel's failure to object to what he characterizes as "other acts" evidence was objectively unreasonable. *See Oswald (Theodore)*, 2000 WI App 2 at ¶ 63. Wolfe offers no argument as to why the WIS. STAT. § 904.04 analysis should apply. Here, the arson and institutional misconduct were not offered to show that Wolfe had a bad character and acted in conformity with that bad character. The State was obligated to establish that Wolfe suffered from a mental disorder, as defined in WIS. STAT. ch. 980, and that he was dangerous because it was substantially probable that he would engage in acts of sexual violence. WIS. STAT. § 980.01(7).

¶ 37. Diagnoses of a mental disorder and dangerousness are directly foretold through past conduct. The jury needed to consider evidence of relevant past conduct to determine whether Wolfe had a mental disorder which predisposed him to commit acts of sexual violence and whether there was a substantial probability that he would commit acts of sexual violence in the future. "[P]revious instances of violent behavior are an important indicator of future violent tendencies." *Kan-*

*sas v. Hendricks*, 521 U.S. 346, 358 (1997) (citation omitted).

¶ 38. The use of an individual's conduct and behavioral history and their effect on treatment is suitable in a WIS. STAT. ch. 980 commitment case. *See State v. Adams*, 223 Wis. 2d 60, 73, 588 N.W.2d 336 (Ct. App. 1998), *review denied*, 225 Wis. 2d 488, 594 N.W.2d 382 (Wis. Apr. 6, 1999) (No. 96–3136). As trial counsel testified at the posttrial hearing:

> For the most part, the [§ ] 904.04 analysis applies more appropriately to a strictly criminal situation. It's designed to prevent convictions based on past behavior and the identity of the current offense to that past behavior. That [ch.] 980 trial is a different situation than civil. It's not looking at a particular specific behavior at that moment in trying to decide if somebody did it or didn't. It's a forward looking, is he likely to offend in the future type situation, and that — and when you get reports from the experts that, unfortunately, open the door to that type of evidence, it's likely that you're going to have to deal with it in some fashion. The probative, prejudicial cumulative waste of time analysis is the appropriate I think.

¶ 39. We agree. The appropriate inquiry is whether the evidence is relevant and whether its probative value is outweighed by the risk of undue prejudice. *See* WIS. STAT. §§ 904.01, 904.03.

¶ 40. At trial, evidence was presented regarding Wolfe's arson adjudication, his institutional rule violations and misconduct while at Norris, and his inability to participate in treatment programs. Clinical psychologist Michael Caldwell testified that Wolfe suffers from pedophilia and a personality disorder with antisocial

features. A personality disorder is exhibited by a pervasive pattern of disregard for the rights of others, failure to comply with rules, irresponsibility and lack of remorse. The arson adjudication and institutional misconduct were presented to establish Wolfe's diagnosed mental disorder, his dangerousness, and his risk of reoffending. This evidence had the tendency to make the statutory elements of a WIS. STAT. ch. 980 commitment more probable than not, *see State v. Sullivan,* 216 Wis. 2d 768, 786, 576 N.W.2d 30 (1998), and thus was relevant. *See* WIS. STAT. § 904.01.

¶ 41. Moreover, the probative value of this evidence was not substantially outweighed by the risk of unfair prejudice. The evidence was highly probative of the elements of a mental disorder and dangerousness, the establishment of which are required for a WIS. STAT. ch. 980 commitment. WIS. STAT. § 980.02(2)(b), (c). To be unfairly prejudicial, this evidence must have the tendency to influence the result by improper means, appeal to the jury's sympathies, arouse a sense of horror, or provoke the jury to punish or otherwise base its decision on something other than the established propositions of the case. *State v. Davidson,* 2000 WI 91, ¶ 73, 236 Wis. 2d 537, 613 N.W.2d 606. The arson adjudication and institutional misconduct evidence does none of these, especially compared to Wolfe's lengthy sexual offense history.

¶ 42. Wolfe's arson adjudication and his misconduct while institutionalized were relevant to establish that he suffers from a personality disorder, a qualifying mental disorder under WIS. STAT. § 980.01(2), *see Adams,* 223 Wis. 2d at 64, and their probative value outweighed any risk of unfair prejudice. Trial counsel's

approach was entirely reasonable and does not constitute deficient performance.

### *Judicial Competency*

¶ 43. Wolfe argues that the trial court lacked competency to hear the WIS. STAT. ch. 980 commitment proceeding because the petition was not timely filed in compliance with WIS. STAT. § 980.02(2)(ag). As Wolfe admits, this is the same argument that was made earlier when he alleged ineffective assistance of counsel for failure to object to the timeliness of the petition. As such, our response is the same. The ch. 980 petition was filed within ninety days of discharge from a delinquency adjudication based upon a sexually violent offense, in compliance with § 980.02(2)(ag). The trial court therefore had competency to proceed.

### *Personal Service*

¶ 44. Wolfe argues that WIS. STAT. ch. 980 is a civil commitment procedure and ch. 980 proceedings are subject to the provisions of WIS. STAT. chs. 801 through 847. According to Wolfe, the State failed to comply with the personal service requirements of ch. 801 and thus the trial court lacked personal jurisdiction over him.

¶ 45. WISCONSIN STAT. ch. 980 commitment proceedings are civil proceedings. *State v. Brown*, 215 Wis. 2d 716, 721–22, 573 N.W.2d 884 (Ct. App. 1997). WISCONSIN STAT. § 801.01(2) mandates that WIS. STAT. chs. 801 through 847 govern the practice and procedure of all civil actions and special proceedings unless a "different procedure is prescribed by a statute or rule."

*Brown*, 215 Wis. 2d at 723. Here, a different procedure is prescribed by ch. 980.

¶ 46. WISCONSIN STAT. § 980.02 sets forth the required contents of a WIS. STAT. ch. 980 petition and states where the action may be filed. WISCONSIN STAT. § 980.04(1) states that upon the filing of the petition, the trial court shall review the petition to determine whether to issue an order to detain the person named in the petition; the person may be detained only if the court finds that there is cause to believe that the person is eligible for commitment as a sexually violent person. *Id.*

¶ 47. Within seventy-two hours of the filing of the petition, the trial court must hold a probable cause hearing to determine whether there is probable cause to believe that the person is a sexually violent person. WIS. STAT. § 980.04(2). The trial court must give reasonable notice of the time and place of the hearing to the person named in the petition. WIS. STAT. § 980.03(1). At the hearing and all other WIS. STAT. ch. 980 hearings, the person named in the petition is entitled to counsel. Sec. 980.03(2)(a). A trial to determine whether the person is sexually violent must be held within forty-five days of the probable cause hearing. WIS. STAT. § 980.05(1).

¶ 48. WISCONSIN STAT. ch. 980 provides its own procedures for commencing a ch. 980 action; thus, the provisions of WIS. STAT. chs. 801 and 802 are inapplicable. In fact, as the State notes in its brief, to apply the provisions of chs. 801 and 802 would lead to absurd results. For example, WIS. STAT. § 801.02(1) mandates that a plaintiff personally serve an authenticated copy of the summons and complaint upon the defendant within ninety days following the filing of said documents with the court. But in a ch. 980 proceeding, the

probable cause hearing and the trial must be held before that ninety days would expire.

¶ 49. Furthermore, the Wisconsin Supreme Court has stated that "[a] ch. 980 proceeding affords the subject of a commitment petition neither the opportunity nor the obligation to file an answer or raise affirmative defenses to the allegations contained in the petition." *State v. Thiel,* 2000 WI 67, ¶ 28, 235 Wis. 2d 823, 612 N.W.2d 94, *on remand,* 2001 WI App 52, 241 Wis. 2d 439, 625 N.W.2d 321, *review denied,* 241 Wis. 2d 439, 625 N.W.2d 321 (Wis. May 8, 2001) (No. 99–0316). If the answer provisions of WIS. STAT. § 802.06 are inapplicable to WIS. STAT. ch. 980, it would be illogical to apply the commencement of action and service provisions of WIS. STAT. ch. 801. We will not construe statutes to work an absurd result. *State v. Clausen,* 105 Wis. 2d 231, 245, 313 N.W.2d 819 (1982). This argument is without merit.

## CONCLUSION

¶ 50. We reject Wolfe's assertions regarding the effectiveness of his trial counsel, as counsel's performance was not deficient. In addition, the trial court did have competency to proceed because the WIS. STAT. ch. 980 petition was timely filed. Finally, the trial court had personal jurisdiction over Wolfe because statutory personal service provisions do not apply here. We therefore affirm the orders of the trial court.

*By the Court.*—Orders affirmed.