In re the Commitment of Carl Kaminski:

State of Wisconsin, Petitioner-Respondent,

v.

Carl Kaminski, Respondent-Appellant.

Court of Appeals

*No. 2008AP2439. Submitted on briefs April 14, 2009.*
*—Decided November 17, 2009.*

2009 WI App 175

(Also reported in 777 N.W.2d 654.)

654

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Donald T. Lang*, assistant state public defender.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Maura FJ Whelan,* assistant attorney general, and *J.B. Van Hollen,* attorney general.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. BRUNNER, J. Carl Kaminski appeals from a judgment and an order of commitment under Wis. Stat. ch. 980 and an order denying his motion for a new trial.[1] Following a jury trial, Kaminski was found a "sexually violent person" subject to involuntary commitment.[2] He filed a postverdict motion for a new trial in the interest of justice on the ground that the jury heard improper expert testimony that prevented the real controversy from being fully tried. The circuit court denied the motion. We affirm.

## BACKGROUND

¶ 2. On May 21, 2007, the State filed a petition alleging that Carl Kaminski was a sexually violent person subject to commitment under Wis. Stat. ch. 980. A jury found Kaminski sexually violent as alleged in the petition, and a judgment was entered involuntarily

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

[2] A "sexually violent person" is defined by Wis. Stat. § 980.01(7) as

> a person who has been convicted of a sexually violent offense, has been adjudicated delinquent for a sexually violent offense, or has been found not guilty of or not responsible for a sexually violent offense by reason of insanity or mental disease, defect, or illness, and who is dangerous because he or she suffers from a mental disorder that makes it likely that the person will engage in one or more acts of sexual violence.

committing him to the Department of Health and Family Services for control, care and treatment.

¶ 3. At the commitment trial, the jury heard testimony from two psychologists called by the State. Dr. Janet Hill from the Department of Corrections diagnosed Kaminski with an antisocial personality disorder that predisposed Kaminski to engage in sexual offenses. Hill noted that Kaminski scored high in psychopathy, but acknowledged he was not sexually deviant. Hill concluded Kaminski's mental disorder made it more likely than not that he would engage in acts of sexual violence in the future. Dr. Richard Elwood from DHFS agreed with Hill's assessment in all material respects.

¶ 4. In formulating their opinions, the State's experts used three actuarial instruments, each sensitive to different types of sex offenses, to assess the risk Kaminski presented. Hill explained that each instrument yields a score based on the input information, and that score is compared to the recidivism rates of other individuals with the same score. Although Hill and Elwood obtained slightly different scores on two of the actuarials, the instruments generally considered the same information about Kaminski's past offense history. The psychologists considered all relevant conduct, including offenses for which the defendant was acquitted or the charges dismissed. Hill made clear the actuarial scales did not involve the use of independent professional judgment, as the rules governing their application were strict. According to Hill, "[these are] the rules that you have to use[,] otherwise [you] don't use the instrument."

¶ 5. Hill and Elwood relied upon four incidents of sexual assault when scoring the actuarial assessments. The first incident was drawn from a 1995 presentence report indicating that, in 1984, Kaminski was taken to

jail for the alleged sexual assault of a female resident at the juvenile group home in which he was living. Although no charging document accompanied the report, the psychologists considered it valuable because Kaminski was detained and transferred to a more secure environment as a result of the incident. The experts also used a 1996 conviction for second-degree sexual assault of a child. A third incident stemmed from allegations that in 1998 Kaminski sexually assaulted K.B., a twenty-seven-year-old female. An administrative law judge at Kaminski's probation revocation hearing determined K.B.'s allegation was not credible, and sexual assault charges against Kaminski were subsequently dismissed. Finally, the psychologists relied upon a 2003 charge alleging Kaminski had sexual intercourse with J.S., a fifteen-year-old girl. An administrative law judge found the allegation was proven by a preponderance of the evidence, although Kaminski was ultimately acquitted at trial.

¶ 6. Dr. Luis Rosell provided expert testimony on behalf of Kaminski. Rosell agreed with the State's experts that Kaminski suffered from antisocial personality disorder, but disagreed that Kaminski was predisposed to engage in acts of sexual violence. According to Rosell, the State's experts improperly scored the actuarial instruments, although he agreed prior arrests or charges should be counted according to the actuarials' scoring rules. Rosell also testified he did not use those instruments because they inflated the rate of recidivism. Instead, Rosell relied upon a list of thirty dynamic factors in reaching his conclusion that Kaminski was unlikely to reoffend in a sexually violent way.

¶ 7. Following the jury verdict, Kaminski filed a postjudgment motion for a new trial in the interest of justice, arguing the evidence of the 1984 and 1998

incidents was unreliable and should have been excluded. The State disagreed, claiming the evidence was properly admitted, and noting Kaminski vigorously attacked the State experts' reliance on the 1984 and 1998 incidents during cross-examination and in his closing argument. The court denied Kaminski's motion. Kaminski appeals.

## DISCUSSION

¶ 8. Kaminski requests that we exercise our authority under WIS. STAT. § 752.35[3] and order a new trial in the interest of justice based on three testimonial events that he argues "so clouded a crucial issue that it may be fairly said that the real controversy was not fully tried." *State v. Wyss*, 124 Wis. 2d 681, 735, 370 N.W.2d 745 (1985), *overruled on other grounds by State v. Poellinger*, 153 Wis. 2d 493, 505, 451 N.W.2d 752 (1990). First, Kaminski argues evidence of the 1984 and 1998 incidents does not satisfy the preliminary relevancy requirement established in *State v. Gray*, 225 Wis. 2d 39, 590 N.W.2d 918 (1999), and should have been excluded. Second, Kaminski claims Hill inappropriately testified that sexually violent persons committed under WIS. STAT. ch. 980 are re-evaluated annually. Finally, he argues Hill introduced an extraneous con-

---

[3] WISCONSIN STAT. § 752.35 empowers this court to reverse the judgment or order appealed from "if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried." In our analysis, we disregard "whether the proper motion or objection appears in the record" and we may "direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial." *Id.*

sideration to the jury—whether commitment was in Kaminski's best interests and that of society—when she testified that Sand Ridge is the only treatment facility in Wisconsin for psychopaths. We consider each claimed error separately, reviewing discretionary acts of the trial court, such as the admission of evidence, according to the erroneous exercise of discretion standard. *State v. LaCount*, 2008 WI 59, ¶ 15, 310 Wis. 2d 85, 750 N.W.2d 780.

## A. Other Acts Evidence in a WIS. STAT. ch. 980 Commitment Hearing

¶ 9. Kaminski analogizes a WIS. STAT. ch. 980 commitment hearing to a criminal trial in arguing that the trial court erroneously admitted evidence of past misconduct during his hearing. In an ordinary criminal trial, the admissibility of other acts evidence is strictly circumscribed by a three-step analytical framework grounded in the rules of evidence. This tripartite analysis, adopted in *State v. Sullivan*, 216 Wis. 2d 768, 771–73, 576 N.W.2d 30 (1998), operates as an exception to WIS. STAT. § 904.04(2)(a)'s general prohibition of the use of other acts evidence. Under *Sullivan*, other acts evidence is admissible only if the proponent can provide satisfactory answers to the following three questions:

> (1) Is the other acts evidence offered for an acceptable purpose under Wis. Stat. § (Rule) 904.04(2), such as establishing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident?

> (2) Is the other acts evidence relevant, considering the two facets of relevance set forth in Wis. Stat. § (Rule) 904.01? The first consideration in assessing relevance

660

is whether the other acts evidence relates to a fact or proposition that is of consequence to the determination of the action. The second consideration in assessing relevance is whether the evidence has probative value, that is, whether the other acts evidence has a tendency to make the consequential fact or proposition more probable or less probable than it would be without the evidence.

(3) Is the probative value of the other acts evidence substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence? *See* Wis. Stat. § (Rule) 904.03.

*Sullivan*, 216 Wis. 2d at 771–73 (footnote omitted).

¶ 10. As noted in *Sullivan*, WIS. STAT. § 904.04 regulates the threshold admissibility inquiry for other acts evidence. *Sullivan* requires that a court ascertain the proponent's substantive rationale for submitting other acts evidence before considering whether that evidence is relevant under WIS. STAT. § 904.01. However, subsection 904.04(2) also contains a relevance component independent of that found in section 904.01. "Under § 904.04(2) . . . other act evidence is relevant if a reasonable jury could find by a preponderance of the evidence that the defendant committed the other act." *State v. Landrum*, 191 Wis. 2d 107, 119–20, 528 N.W.2d 36 (Ct. App. 1995); *see also Gray*, 225 Wis. 2d at 59; *State v. Schindler*, 146 Wis. 2d 47, 52–54, 429 N.W.2d 110 (Ct. App. 1988). In *Gray*, our supreme court noted the symmetry between § 904.04(2)'s preliminary relevancy requirement and WIS. STAT. § 901.04(2), which acknowledges that for some evidence the relevance necessary for admissibility will be conditioned upon the proponent's demonstration of a foundational fact. *Gray*,

661

225 Wis. 2d at 59–61 and n.6. For example, in *Huddleston v. United States*, 485 U.S. 681, 690 (1988), the admissibility of other acts evidence indicating the defendant sold stolen televisions, used for the purpose of demonstrating intent, was conditioned upon the United States establishing the conditional fact that the televisions were stolen.

¶ 11.  Kaminski invokes due process principles in proposing that we extend *Gray*'s preliminary relevance requirement to proceedings under WIS. STAT. ch. 980. Chapter 980 "provides a process for the 'civil commitment of persons, previously convicted of a sexually violent offense, who currently suffer from a mental disorder that predisposes them to repeat such acts.' " *State v. Franklin*, 2004 WI 38, ¶ 15, 270 Wis. 2d 271, 677 N.W.2d 276 (quoting *State v. Post*, 197 Wis. 2d 279, 294, 541 N.W.2d 115 (1995)). It does not establish a criminal process because "someone determined to be a 'sexually violent person' is confined for treatment *not* punishment." *State v. Luttrell*, 2008 WI App 93, ¶ 9, 312 Wis. 2d 695, 754 N.W.2d 249 (citation omitted). Still, Kaminski argues that a civil commitment for any purpose "constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425 (1979). From this, he claims it reasonably follows that *Gray*'s preliminary relevance requirement must be imported from the criminal context to apply in ch. 980 proceedings. Thus, Kaminski contends the State must show that he committed the other acts by a preponderance of the evidence. While Kaminski concedes the 1995 and 2003 offenses met this standard, he asserts evidence of the 1984 and 1998 incidents lacked preliminary relevance under *Gray*.

¶ 12. We cannot accept Kaminski's assertion. Kaminski fails to recognize that *Gray*'s foundational reliability requirement flows from WIS. STAT. § 904.04(2), which does not apply in WIS. STAT. ch. 980 commitment proceedings. *Franklin*, 270 Wis. 2d 271, ¶ 14. In *Franklin*, our supreme court concluded that § 904.04(2) "looks back to analyzing proof of acts that have already occurred. It does not look forward to assess the substantial probability of future conduct, which is the relevant question [in chapter 980 proceedings]." *Id.*, ¶ 12. By parsing the statutory language, the court discerned an "unambiguous legislative intent to restrict the application of WIS. STAT. § 904.04(2) to analyzing evidence used to prove past acts." *Id.*, ¶ 13. Thus, the nature of the chapter 980 hearing demands the jury consider evidence that would normally be barred in a traditional criminal trial.

██

¶ 13. Though the court in *Franklin* did not discuss the due process implications of its decision, our conclusion is consistent with the demands of due process under both the United States and Wisconsin constitutions. Due process, unlike some legal rules, is not a static concept and may vary depending upon the situation. *See State v. Carlson*, 2002 WI App 44, ¶ 13, 250 Wis. 2d 562, 641 N.W.2d 451 (citing *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976)). The specific procedural protections dictated by due process in a given situation depend on the balancing of three factors:

> (1) the private interest that will be affected by the state action; (2) the risk of an erroneous deprivation of the private interest through the procedures utilized and the probable value of added or substitute procedural safeguards; and (3) the state's interest, which includes

the function involved and the fiscal and administrative burdens that the added or substitute procedural requirements would impose.

*Patterson v. Board of Regents,* 119 Wis. 2d 570, 580–81, 350 N.W.2d 612 (1984). Kaminski has correctly identified the strong liberty interest implicated by WIS. STAT. ch. 980, but has given the state's interest and the risk of erroneous deprivation no consideration.[4]

¶ 14. The admission of evidence not satisfying *Gray*'s foundational reliability requirement poses a minimal risk of erroneous deprivation in light of the elaborate procedural protections afforded to a WIS. STAT. ch. 980 respondent. Following a ch. 980 petition's filing, a court reviews the allegations to determine whether there is probable cause to order the respondent detained on the grounds that he or she is eligible for commitment. WIS. STAT. § 980.04(1). If the court finds there is, the respondent is entitled to a hearing at which the court determines whether probable cause exists to believe the respondent is a "sexually violent person" under WIS. STAT. § 980.01(7). WIS. STAT. § 980.04(2)(a). Following the court's affirmative finding, the DHFS conducts an evaluation to determine whether the respondent meets § 980.01(7)'s definition. WIS. STAT. § 980.04(3). Ultimately, the respondent is entitled to a full trial at which "the petitioner has the burden of proving beyond a reasonable doubt that . . . [the respondent] is a sexually violent person." WIS. STAT. § 980.05(3)(a). The respondent has the right to be tried by a jury, § 980.05(2), which must return a unanimous verdict, *see State v. Denman,* 2001 WI App 96, ¶ 4, 243 Wis. 2d 14, 626 N.W.2d 296. The risk that this series of

---

[4] Kaminski fails to fully conduct either a procedural or substantive due process analysis in his brief.

procedures, culminating in a full jury trial, could erroneously deprive the respondent of his or her due process liberty right is minimal. An additional evidentiary rule regulating the admissibility of other acts evidence is of little value, particularly because any weaknesses in the evidence may be revealed to the jury through cross-examination. *Ricco v. Riva*, 2003 WI App 182, ¶ 21, 266 Wis. 2d 696, 669 N.W.2d 193.

¶ 15.   We also cannot discount the state's interest in curtailing the recidivist tendencies of those respondents who are predisposed to commit sexually violent offenses because of a mental illness. Because a respondent is already entitled to a full trial, adopting the *Gray* preliminary relevance standard may not significantly increase the financial burden on the state, but it would undermine the supreme court's rationale for holding Wis. Stat. § 904.04(2) inapplicable to Wis. Stat. ch. 980 commitment proceedings in the first instance. "[I]n ch. 980 proceedings, the fact finder must necessarily consider a respondent's 'relevant character traits and patterns of behavior, and the likelihood that any problematic traits or propensities have been or can be modified' in order to assure the safety of the community at large and the person himself." *Franklin*, 270 Wis. 2d 271, ¶ 14. To the extent that the *Gray* standard would prevent the admission of relevant evidence under Wis. Stat. § 904.01, its adoption would frustrate the jury's ability to accurately assess the probability that a particular respondent will commit sexually violent acts in the future.

¶ 16.   The state's significant interest in preventing this type of predatory conduct, coupled with the minimal risk of erroneous deprivation under Wis. Stat. ch. 980 and the negligible additional value of the *Gray* preliminary relevance requirement, overwhelmingly

counsel against incorporating the *Gray* standard into ch. 980 proceedings. Although a civil commitment will necessarily deprive Kaminski of his liberty, the existing procedures provide all the process that is constitutionally due before a respondent can be deprived of that interest. As the Supreme Court has noted, due process rarely requires a full judicial trial. *See Mathews*, 424 U.S. at 333–34. Nevertheless, our state has chosen to provide this mechanism to give respondents the opportunity to challenge the accuracy and validity of their alleged status as sexually violent persons.

¶ 17. In reaching this conclusion, we are not oblivious to the fact that a WIS. STAT. ch. 980 proceeding bears some indicia of a criminal proceeding. For example, "the alleged malefactor is entitled to a jury trial at which the State must prove the factual predicates for commitment beyond a reasonable doubt. The verdict must be unanimous." 7 DANIEL D. BLINKA, WISCONSIN EVIDENCE § 404.4, at 159 (3d ed. 2008). Neither these shared characteristics, nor the fact that commitment requires the commission of a "sexually violent offense" as a factual predicate, alters the civil nature of the proceedings. As a result, "the nature of the 'sexual predator' inquiry virtually guarantees the wide-ranging admissibility of evidence concerning the defendant's past crimes and transgressions." *Id.* at 160.

■

¶ 18. This does not suggest that no rules govern admissibility of evidence in a WIS. STAT. ch. 980 hearing. As our supreme court noted in *Franklin*, "[i]n order to be admissible in a ch. 980 proceeding, all evidence must be relevant and that relevance must not be outweighed by the danger of unfair prejudice." *Franklin*, 270 Wis. 2d 271, ¶ 16; *see also* WIS. STAT. §§ 904.01, 904.03. Other basic evidentiary rules, including those govern-

ing the admissibility of expert testimony, are also applicable. *See, e.g.,* Wis. Stat. §§ 907.01–907.07. We note that expert testimony regarding incidents of prior sexual assault is admissible under these rules. *See State v. Watson,* 227 Wis. 2d 167, 194–95, 595 N.W.2d 403 (1999) (expert testimony based on presentence investigation admissible); *State v. Pharm,* 2000 WI App 167, ¶¶ 29–30, 238 Wis. 2d 97, 617 N.W.2d 163 (expert may explain facts and data upon which he or she relies in forming opinion). In addition, we have repeatedly upheld the admissibility of actuarial scores in ch. 980 hearings. *See, e.g., State v. Smalley,* 2007 WI App 219, ¶¶ 15–20, 305 Wis. 2d 709, 741 N.W.2d 286.

¶ 19.   "The appropriate inquiry is whether the evidence is relevant and whether its probative value is outweighed by the risk of undue prejudice." *State v. Wolfe,* 2001 WI App 136, ¶ 39, 246 Wis. 2d 233, 631 N.W.2d 240. Kaminski does not suggest the evidence introduced by the State lacked the relevance required under Wis. Stat. § 904.01, nor does he suggest its relevance was outweighed by the risk of prejudice under Wis. Stat. § 904.03. Both *Franklin* and *Wolfe* upheld the admissibility of evidence of unproven misbehavior, including reports disclosing the defendant's misconduct while incarcerated. *Franklin,* 270 Wis. 2d 271, ¶ 17; *Wolfe,* 2001 WI App 136, ¶ 35. In *Franklin,* the court noted "the standard risk assessment for sexual offenders takes into account all past violations of the law in attempting to evaluate the probability of future sexually assaultive behavior . . . . We agree that the evidence is relevant." *Franklin,* 270 Wis. 2d 271, ¶ 22. We see no reason to assign error to the trial court in this case. Kaminski was not deprived of due process by the circuit court's decision to admit relevant evidence that was not unfairly prejudicial.

## 1. Testimony Regarding Annual Re-evaluation

¶ 20.   Kaminski also requests a new trial because the jury heard testimony indicating that a person committed under WIS. STAT. ch. 980 receives annual re-evaluation. The allegedly prejudicial testimony initially occurred while Dr. Hill was discussing her credentials:

> I also for the Department of Health and Family Services provide Chapter 980 re-evaluations. These evaluations are for men who have already been committed and reside at Sand Ridge Secure Treatment Center. Those men have to be re-evaluated every year and I am one of the people who does that.

Kaminski argues that Hill later compounded the error while responding to general questions regarding the impact of factors such as age and illness on future dangerousness:

> These things would be taken into account were he to be in a treatment program . . . . [I]f Mr. Kaminski were to be committed, and I don't know whether he will be or not, he's [sic] going to be thrown in a hole or a dungeon, he's going to be looked at all the time. If he should be sick, of course. Men who are at Sand Ridge are re-evaluated by people like myself every single year to see how they're doing.

Immediately following Hill's response, the court instructed the jury, "Don't worry about anything that happens after your decision."

¶ 21.   Kaminski claims these infrequent references to annual re-evaluation so wholly tainted the jury that it was unable to perform its fact-finding function. As authority, Kaminski cites decisions from Maryland and New York in which courts expressed concern that

by commenting about the availability of appellate review at trial, the State led "the jury to believe that it can shift part of its responsibility to another body." *Johnson v. State*, 601 A.2d 1093, 1096–97 (Md. 1992) (quotation omitted); *see also Caldwell v. Mississippi*, 472 U.S. 320, 333 (1985) (noting other courts' condemnation of prosecutorial arguments suggesting the possibility of verdict review by another authority). Although Kaminski concedes there is no case law finding error when jurors are informed of postcommitment review procedures, he argues Hill's testimony undermined the seriousness with which the jury undertook its duties.

¶ 22. We do not consider Hill's comments sufficiently egregious to diminish the jury's sense of responsibility for its verdict. Hill's references to re-evaluation were vague and undeveloped. Hill did not testify regarding the purpose of the re-evaluations, nor did she discuss the methodology or content of subsequent evaluations. She did not inform the jury that re-evaluation could lead to release. We agree with the State's analysis: "[N]othing in Hill's testimony [could lead] a reasonable juror [to] infer that a re-evaluation was the equivalent of an appeal that could correct any mistake in the jury's finding and thereby relieve the jury of its responsibility to make a decision based on the law and evidence." The distinction between the jury's initial "sexually violent person" finding and subsequent re-evaluations is not lost on us. Even accepting Kaminski's theory, the jury understood its finding would commit Kaminski for at least one year, a serious liberty deprivation.

¶ 23. Even absent the allegedly improper testimony, the jury no doubt expected Kaminski's condition would be re-evaluated following his commitment. The jury knew Kaminski had been evaluated following the

1996 sexual assault conviction, having heard testimony that Kaminski made no progress in two prior rounds of treatment with the Department of Corrections. Testimony regarding prior treatment is not uncommon; because a prior conviction for a sexually violent offense is necessary, a WIS. STAT. ch. 980 respondent has often received prior treatment, evidence of which is relevant and admissible at trial to determine the respondent's current dangerousness. Treatment necessarily suggests a corrective process designed to ameliorate the adverse condition. Thus, the jury could reasonably infer that Kaminski, once committed, would receive occasional re-evaluations as part of the treatment regimen. In other words, it was apparent to the jury "that the state is prepared to provide specific treatment to those committed under ch. 980 and not simply warehouse them." *State v. Carpenter*, 197 Wis. 2d 252, 267, 541 N.W.2d 105 (1995).

██

¶ 24. We conclude Hill's statements did not distract the jury from their task of determining whether Kaminski was a sexually violent person. Hill's "isolated misstep did not prevent the real controversy from being tried." *See Smalley*, 305 Wis. 2d 709, ¶ 2. In addition, it was obvious to the jury that, if committed, Kaminski would undergo treatment for his mental disorder, which necessarily suggests periodic re-evaluation. We are not persuaded that vague references to a post-commitment treatment regime that includes re-evaluation prevented the jury from accurately determining whether the State met its burden of proof on each element, particularly where the jury could infer the existence of the treatment program in the first instance. Accordingly, Kaminski is not entitled to a new trial on this ground.

670

## 2. Testimony Regarding Sand Ridge Psychopathic Treatment Program

¶ 25.   Kaminski argues he is entitled to a new trial because Hill's testimony implicitly suggested that Kaminski's commitment was in his best interest and that of the community. While discussing the reasons for Kaminski's failure to progress in two prior treatment programs, Hill stated, "The research literature shows that ... conventional treatment programs ... for ... regular sex offenders ... do not work for psychopathic offenders .... So the only treatment program that I'm aware of for psychopaths in the state of Wisconsin is at Sand Ridge." Kaminski argues this testimony introduced an irrelevant comparative analysis that favored the treatment regimen at Sand Ridge over the treatment programs in which Kaminski participated following his 1996 conviction.

¶ 26.   Kaminski analogizes to termination of parental rights (TPR) proceedings for the proposition that a litigant's invocation of the "best interests of the child" taints a jury's assessment of the elements underlying the termination petition. *See Waukesha County Dep't of Soc. Servs. v. C.E.W.*, 124 Wis. 2d 47, 61, 368 N.W.2d 47 (1985). TPR proceedings are bifurcated by statute. Wis. Stat. § 48.424(3). A jury must determine whether the state has established grounds for the termination of parental rights. *Id.* The court then decides what disposition is in the best interests of the child. *Id.* In *C.E.W.*, our supreme court limited the "best interests" standard to the dispositional phase of TPR proceedings. *C.E.W.*, 124 Wis. 2d at 61. The court concluded the "best interests" standard is applicable only after the statutory grounds for termination have been established. *Id.* at 61 n.8.

¶ 27.   WISCONSIN STAT. ch. 980 establishes a bifur-
cated process, but one distinct from that contained in
the TPR statutes. Under ch. 980, the fact finder deter-
mines whether the respondent is a sexually violent
person. The court then enters judgment on that finding
and orders the person committed. WIS. STAT. § 980.06.
The decision to enter judgment upon the finding is not
a discretionary one, which distinguishes ch. 980 from
the TPR process. No independent consideration analo-
gous to the "best interests" standard permeates the
court's role in a ch. 980 proceeding. In addition, the
TPR statute explicitly reserves consideration of the
best interests of the child for the court. In contrast,
chapter 980 does not preclude consideration of the best
interests of the respondent or those of society. In fact,
the definition of a "sexually violent person" implicitly
invokes both of these factors, *see* WIS. STAT. § 980.01(7),
and our supreme court has recognized protection of the
public as a principal purpose for committing a sexually
violent person, *Carpenter*, 197 Wis. 2d at 271. In sum,
we agree with the State's conclusion that "the analogy
between the two statutes is weak."

## CONCLUSION

¶ 28.   "This court approaches a request for a new
trial with great caution. We are reluctant to grant a new
trial in the interest of justice, and thus we exercise our
discretion only in exceptional cases." *State v.
Armstrong*, 2005 WI 119, ¶ 114, 283 Wis. 2d 639, 700
N.W.2d 98 (citation omitted). None of the claimed
errors, whether considered together or separately, have
convinced us that Kaminski is entitled to a new trial in
the interest of justice. None of the allegedly prejudicial

testimony prevented the real controversy—whether Kaminski was a "sexually violent person" under Wɪꜱ. Sᴛᴀᴛ. § 980.01(7)—from being fully tried. We therefore affirm the judgment and commitment order.

*By the Court.*—Judgment and order affirmed.