# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2019AP1832-CR & 2019AP1833-CR |

| | |
|---|---|
| COMPLETE TITLE: | State of Wisconsin,<br>      Plaintiff-Respondent,<br>   v.<br>Christopher W. Yakich,<br>      Defendant-Appellant-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 396 Wis. 2d 195,956 N.W.2d 465
(2021 – unpublished)

| | |
|---|---|
| OPINION FILED: | February 16, 2022 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | December 8, 2021 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Waupaca |
|   JUDGE: | Vicki L. Clussman |

JUSTICES:

ZIEGLER, C.J., delivered the majority opinion of the Court, in which ROGGENSACK, REBECCA GRASSL BRADLEY, HAGEDORN, and KAROFSKY, JJ., joined.  DALLET, J., filed a dissenting opinion, in which ANN WALSH BRADLEY, J., joined.

NOT PARTICIPATING:

ATTORNEYS:

For the plaintiff-respondent-petitioner, there were briefs filed by *Cary Bloodworth*, assistant state public defender.  There was an oral argument by *Cary Bloodworth*.

For the defendant-appellant, there was a brief filed by *Scott E. Rosenow*, assistant attorney general, with whom on the brief was *Joshua L. Kaul*, attorney general. There was an oral argument by *Kara Lynn Janson,* assistant attorney general.

**2022 WI 8**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

Nos.   2019AP1832-CR & 2019AP1833-CR
  (L.C. Nos.  2018CF169 & 2018CF301)

STATE OF WISCONSIN  :  IN SUPREME COURT

**State of Wisconsin,**

**Plaintiff-Respondent,**

**v.**

**Christopher W. Yakich,**

**Defendant-Appellant-Petitioner.**

**FILED**

**FEB 16, 2022**

Sheila T. Reiff
Clerk of Supreme Court

ZIEGLER, C.J., delivered the majority opinion of the Court, in which ROGGENSACK, REBECCA GRASSL BRADLEY, HAGEDORN, and KAROFSKY, JJ., joined.  DALLET, J., filed a dissenting opinion, in which ANN WALSH BRADLEY, J., joined.

REVIEW of a decision of the Court of Appeals.  *Affirmed.*

¶1   ANNETTE KINGSLAND ZIEGLER, C.J.   This is a review of an unpublished decision of the court of appeals, State v. Yakich, Nos. 2019AP1832-CR & 2019AP1833-CR, unpublished slip op. (Wis. Ct. App. Jan. 14, 2021), affirming the Waupaca County circuit court's[1] orders committing Christopher W. Yakich to the Wisconsin Department of Health Services for a total period of five years.

---

[1] The Honorable Vicki L. Clussman presided.

¶2 In two separate cases, Yakich pleaded guilty to three counts of bail jumping and one count of phone harassment. In the first case, he pleaded guilty to one count of bail jumping and one count of phone harassment, and in the second case, he pleaded guilty to two counts of bail jumping. The circuit court accepted Yakich's pleas in both cases at the same hearing. After the parties agreed that Yakich was not guilty by reason of mental disease or defect ("NGI")[2] for all four of his offenses, the court ordered a five-year NGI commitment period. In so doing, the circuit court ordered a two-year term of commitment for one of Yakich's cases and a three-year term of commitment for the second case. The commitment periods were ordered to run consecutively.

¶3 On appeal, Yakich argues that the circuit court's two commitment orders must run concurrently and cannot run consecutively. However, we hold that Wis. Stat. § 971.17 (2017-18)[3] provides circuit courts with the statutory authority to impose consecutive periods of NGI commitment. Because the circuit court properly exercised its authority to impose consecutive NGI

---

[2] In Wisconsin, individuals can be found "not guilty by reason of mental disease or defect" of a criminal charge. See Wis. Stat. § 971.15 (2019-20) (explaining the standard for asserting the defense of not guilty by reason of mental disease or defect). "This is known in common parlance as the 'insanity' defense." State v. Burton, 2013 WI 61, ¶42, 349 Wis. 2d 1, 832 N.W.2d 611. Thus, "NGI," for "not guilty by reason of insanity," is used as a shorthand.

[3] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

commitment periods, the circuit court and the court of appeals are affirmed.

I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶4   There are two criminal cases at issue.  In May 2018, Yakich called his mother to tell her that he intended to assault his brother and burn his brother's house to the ground.  At the time of the phone call, Yakich was on a signature bond for unrelated criminal charges.  He was subsequently charged in Waupaca County circuit court with one count of phone harassment and one count of felony bail jumping, and he was released again on signature bond.[4]  This is the first criminal case at issue.

¶5   In August 2018, while on bond, Yakich called the Waupaca County Department of Health and Human Services distressed and contemplating suicide.  Police went to Yakich's apartment to conduct a welfare check.  When the police arrived, they found the front door barricaded; Yakich refused to answer the door.  After the police attempted to enter the apartment through use of a battering ram, Yakich exited his apartment through a back entrance. The police quickly apprehended Yakich behind his apartment, and he was handcuffed and searched.  Yakich began yelling frantically, casting profanities, and accusing police of sexual assault.  Once Yakich was arrested, police entered his apartment and, in plain view, officers observed drug paraphernalia and suspected illegal narcotics.  After obtaining a search warrant, police seized drug

---

[4] Waupaca County Case No. 2018CF169.

paraphernalia and controlled substances in Yakich's possession; marijuana and traces of cocaine were discovered.

¶6 As a result of the events in August 2018, the State charged Yakich in Waupaca County circuit court with two counts of felony bail jumping and one count each of misdemeanor bail jumping, telephone harassment, obstructing an officer, possession of tetrahydrocannabinols ("THC"), disorderly conduct, and possession of drug paraphernalia.[5] This is the second criminal case at issue in the instant dispute.

¶7 After Yakich was charged in both cases, he entered into a global plea agreement to resolve his outstanding charges. He pleaded guilty to felony bail jumping and phone harassment in the first case, and he pleaded guilty to two counts of felony bail jumping in the second case. Yakich then pleaded NGI to those same counts.[6] The State chose to not object to Yakich's NGI plea. At a hearing in December 2018, the circuit court accepted Yakich's guilty and NGI pleas for both criminal cases.

¶8 At the December 2018 hearing, the State argued that the court should impose a two-year NGI commitment period for the first case and a three-year NGI commitment period for the second case. In total, the State asked that the court order five years of NGI

---

[5] Waupaca County Case No. 2018CF301.

[6] NGI pleas are "bifurcated into two phases: the guilt phase and the responsibility phase." State v. Fugere, 2019 WI 33, ¶¶26-27, 386 Wis. 2d 76, 924 N.W.2d 469. The defendant proceeds to an NGI determination only after he is "found guilty of the elements of the crime(s)." Id.

4

commitment, with the two commitment periods running consecutively. Yakich opposed the State's proposal. He argued that the circuit court could run the two NGI commitment orders only concurrently, and thus, according to Yakich, a total commitment period of three years was warranted.

¶9 The circuit court agreed with the State. It imposed a five-year commitment period, running a two-year period in the first case consecutive to a three-year period in the second case. Further, the circuit court ordered that Yakich be institutionalized in order to receive proper mental health treatment.

¶10 Yakich appealed the circuit court's orders, arguing that the circuit court lacked authority to run the two NGI commitment orders consecutively. On January 14, 2021, the court of appeals affirmed the circuit court. Yakich, Nos. 2019AP1832—CR & 2019AP1833-CR. The court of appeals noted that in State v. C.A.J., 148 Wis. 2d 137, 434 N.W.2d 800 (Ct. App. 1988), it had held that NGI commitment periods under Wis. Stat. § 971.17 (1987-88) could total the maximum period of commitment that the defendant would have received had the defendant been subject to traditional criminal sentencing, "taking into account that . . . sentencing court[s] . . . have authority to impose consecutive prison sentences." Yakich, Nos. 2019AP1832-CR & 2019AP1833-CR, ¶¶19-23. Thus, "a commitment period encompassing multiple criminal counts" may "add[] together the maximum terms of imprisonment for all of those counts." Id., ¶22. Because it was

5

concerned over whether NGI commitments could run consecutively to criminal confinement, the court of appeals stated that combined NGI commitment periods would not technically be "consecutive." Id., ¶¶9-14. Instead, the court of appeals reasoned that combined terms would be "a single commitment period" with no consecutive NGI commitment terms.[7] Id., ¶23. Nonetheless, the court of appeals concluded that the holding of C.A.J. was still binding law, despite amendments to Wis. Stat. § 971.17 since the 1988 case was decided. Therefore, Yakich's five-year commitment period was affirmed.

¶11 Yakich petitioned this court to review the court of appeals decision. On June 16, 2021, we granted the petition.

## II. STANDARD OF REVIEW

¶12 This case presents a question of statutory interpretation. "Interpretation of a statute is a question of law that we review de novo, although we benefit from the analyses of the circuit court and the court of appeals." Estate of Miller v. Storey, 2017 WI 99, ¶25, 378 Wis. 2d 358, 903 N.W.2d 759. "[S]tatutory interpretation begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry. Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or

---

[7] As explained below, we conclude that Wis. Stat. § 971.17 authorizes consecutive NGI commitment periods. Thus, we do not adopt the court of appeals' framing of the issue, nor do we accept its reasoning that circuit courts are prohibited from running multiple NGI commitment terms consecutively.

special definitional meaning." State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citations and quotations omitted). In addition, "statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Id., ¶46.

### III. ANALYSIS

¶13 Yakich argues that courts cannot impose consecutive periods of NGI commitment, and his two commitment orders must run concurrently. He argues that a statute must provide circuit courts with the authority to impose consecutive NGI commitments, and Wis. Stat. § 971.17, the NGI commitment statute, fails to do so. In response, the State argues that the court of appeals correctly applied its binding precedent in C.A.J. According to the State, the court of appeals accurately concluded in C.A.J. that consecutive NGI commitment periods are appropriate, just as consecutive terms of confinement are appropriate in criminal sentencing. Even though § 971.17 has been amended since C.A.J., the State claims the reasoning underlying the decision remains sound.

¶14 We agree with the State and conclude that circuit courts may impose consecutive periods of NGI commitment.

### A. The Authority To Impose Consecutive NGI Commitment Periods

¶15 Wisconsin Stat. § 971.17(1) establishes the commitment periods for individuals found NGI. Under the statute, commitment

7

periods are set by reference to the category of offense and when the offense occurred:

(a) Felonies committed before July 30, 2002. Except as provided in par. (c), when a defendant is found not guilty by reason of mental disease or mental defect of a felony committed before July 30, 2002, the court shall commit the person to the department of health services for a specified period not exceeding two-thirds of the maximum term of imprisonment that could be imposed against an offender convicted of the same felony, including imprisonment authorized by any applicable penalty enhancement statutes, subject to the credit provisions of s. 973.155.

(b) Felonies committed on or after July 30, 2002. Except as provided in par. (c), when a defendant is found not guilty by reason of mental disease or mental defect of a felony committed on or after July 30, 2002, the court shall commit the person to the department of health services for a specified period not exceeding the maximum term of confinement in prison that could be imposed on an offender convicted of the same felony, plus imprisonment authorized by any applicable penalty enhancement statutes, subject to the credit provisions of s. 973.155.

(c) Felonies punishable by life imprisonment. If a defendant is found not guilty by reason of mental disease or mental defect of a felony that is punishable by life imprisonment, the commitment period specified by the court may be life, subject to termination under sub. (5).

(d) Misdemeanors. When a defendant is found not guilty by reason of mental disease or mental defect of a misdemeanor, the court shall commit the person to the department of health services for a specified period not exceeding two-thirds of the maximum term of imprisonment that could be imposed against an offender convicted of the same misdemeanor, including imprisonment authorized by any applicable penalty enhancement statutes, subject to the credit provisions of s. 973.155.

§ 971.17(1).

8

¶16 Thus, the maximum commitment period for felonies committed prior to July 30, 2002, is tied to the "maximum term of imprisonment that could be imposed against an offender convicted of the same felony," while felonies committed on or after July 30, 2002, have a maximum period tied to "the maximum term of confinement in prison" that could be imposed in traditional criminal sentencing. Wis. Stat. § 971.17(1)(a), (b). A felony punishable by life imprisonment has a maximum commitment period of life, and the maximum commitment period for misdemeanors is based on "two-thirds of the maximum term of imprisonment" that could be imposed in criminal sentencing. § 971.17(1)(c), (d).

¶17 All four categories of NGI commitment, by the plain text of the statute, are tied to and directly dependent on the lengths of sentences in criminal proceedings. See Kalal, 271 Wis. 2d 633, ¶45. NGI commitment orders are limited by how long an "offender convicted of the same [offense]" may be "imprison[ed]" or "confin[ed] in prison." Wis. Stat. § 971.17(1)(a), (b), (d). Instead of setting out an independent basis by which courts may determine the length of NGI commitments, the legislature made NGI commitment lengths dependent upon criminal sentencing lengths. Under § 971.17(1), to determine the length of NGI commitments, courts must look to criminal terms of imprisonment and confinement, as well as criminal "penalty enhancement statutes," and nowhere else. Id. Further, the statute allows NGI committees to reduce their period of commitment by the terms of Wisconsin's criminal sentence credit statute. See id. (explaining that periods of NGI

9

commitment are "subject to the credit provisions of s. 973.155"). The statute does not limit or define lengths of NGI commitment for multiple offenses. Instead, under the plain terms of § 971.17, the length of NGI commitment is based on the total length of prison terms the individual could receive in traditional criminal proceedings.

¶18 The legislature certainly could have written the statute differently. For instance, in Wis. Stat. § 973.09(2), the legislature explicitly outlined "the minimum and maximum 'original term of probation' that may be imposed for different quantities and classes of misdemeanor and felony offenses." State v. Dowdy, 2012 WI 12, ¶40, 338 Wis. 2d 565, 808 N.W.2d 691 (quoting Wis. Stat. § 973.09(2) (2009-10)). Under § 973.09(2), courts are provided identified ranges for probation, and those ranges vary based on whether the individual was convicted of one misdemeanor, "not less than 2 nor more than 4 misdemeanors," "5 or more misdemeanors," a felony, or "2 or more crimes, including at least one felony." § 973.09(2)(a), (b). The probation statute itself defines lengths of probation and bases them on the type, and number, of offenses committed. Unlike Wis. Stat. § 971.17, § 973.09 does not rely on lengths of incarceration as established under criminal sentencing statutes. In § 971.17, the legislature took a different approach. It cited and relied on the criminal sentencing system to define the lengths of NGI commitments. See § 971.17(1).

10

¶19 In line with Wis. Stat. § 971.17(1)'s statutory directive, we have repeatedly recognized that the length of NGI commitments is intimately tied to traditional criminal sentencing. See, e.g., State v. Fugere, 2019 WI 33, ¶47, 386 Wis. 2d 76, 924 N.W.2d 469 ("In Wisconsin, NGI commitment terms may not exceed the maximum confinement term of the charged criminal offense."); State v. Randall, 192 Wis. 2d 800, 808-09, 532 N.W.2d 94 (1995) ("[NGI] commitment may not exceed the maximum term of imprisonment which could have been imposed for the offenses charged."). As the court of appeals accurately explained in C.A.J., 148 Wis. 2d at 140, "the legislature intended to prohibit a person found not guilty by reason of mental defect or disease from being committed any longer than the underlying offense," i.e., how the person would have been sentenced if the NGI defense had failed.

¶20 When a defendant is criminally sentenced, a circuit court has the authority to impose consecutive terms of confinement. Wis. Stat. § 973.15(2). For decades, courts have understood that NGI commitment lengths, by the text of Wis. Stat. § 971.17, are dependent on the lengths of criminal sentences. Accordingly, courts have recognized that the maximum NGI commitment term a court can impose is the total length of consecutive criminal sentences

11

for the same offenses.[8] See C.A.J., 148 Wis. 2d at 139 (concluding that the maximum term of NGI commitment "reflects the maximum length of time under consecutive sentences that [the defendant] could have been imprisoned"); State ex rel. Helmer v. Cullen, 149 Wis. 2d 161, 163, 440 N.W.2d 790 (Ct. App. 1989) (explaining that "the maximum period of [NGI] commitment must be based on consecutive terms").

¶21 In C.A.J., the court of appeals provided sound reasons for permitting NGI commitment based on the lengths of consecutive criminal sentences. The court of appeals recognized that Wis. Stat. § 971.17(1) tied NGI commitments to the length of the "offense charged." C.A.J., 148 Wis. 2d at 139. However, the court of appeals correctly noted that when the legislature uses a singular noun in a statute such as "offense," both the singular and the plural are generally included. Id. at 140; see Wis. Stat. § 990.01(1) (stating that "[i]n construing Wisconsin laws . . . [t]he singular includes the plural"). This is true unless the result is "inconsistent with the manifest intent of the legislature." § 990.001. Because § 971.17(1) by its plain terms prevents NGI commitments from exceeding criminal sentences, it did not conflict with the statute to impose NGI commitment for periods

---

[8] Under Wis. Stat. § 971.17, courts take into account the distinction between confinement before and after Truth-in-Sentencing. NGI commitment terms for felonies committed prior to July 30, 2002, and for misdemeanors cannot exceed "two-thirds of the maximum term of imprisonment that could be imposed." Wis. Stat. § 971.17(1)(a), (d). For felonies committed on or after July 30, 2002, NGI commitment terms cannot exceed "the maximum term of confinement in prison." § 971.17(1)(b).

equal to that of criminal imprisonment. C.A.J., 148 Wis. 2d at 140. It is well accepted that circuit courts can impose consecutive criminal sentences, and thus, NGI commitment periods can run consecutively. Id.; see Wis. Stat. § 973.15(2)(a) ("[T]he court may impose as many [criminal] sentences as there are convictions and may provide that any such sentence be concurrent with or consecutive to any other sentence imposed at the same time or previously."). This reasoning is well-supported and correct.

¶22 The court of appeals in C.A.J. continued and explained that the legislature could have easily limited NGI commitment terms to the maximum criminal sentence for the most serious offense. This would have detached NGI commitments from traditional criminal sentencing, and, in the process, prohibited consecutive NGI commitment periods. In fact, the legislature demonstrated the ability to set lengths of commitment based on the most serious offense when it enacted Wis. Stat. § 971.14, which governs competency proceedings. Under § 971.14, unlike Wis. Stat. § 971.17(1), commitments to obtain competency to participate in legal proceedings are limited to "a period not to exceed 12 months, or the maximum sentence specified for the most serious offense with which the defendant is charged, whichever is less." § 971.14(5). If NGI commitment periods are based on the maximum sentence for the most serious offense, circuit courts would not be permitted to impose consecutive NGI commitments and criminal sentencing rules would not control. We adopt this reasoning in full.

13

¶23 Similarly, the legislature could have limited the length of NGI commitments to specifically delineated terms, and varied the length based on the number of offenses of which the defendant was convicted. As explained above, the legislature did this with probation under Wis. Stat. § 973.09(2).

¶24 The legislature in Wis. Stat. § 971.17(1) did not limit NGI commitments to "a period not to exceed 12 months, or the maximum sentence specified for the most serious offense with which the defendant is charged, whichever is less," as it did in Wis. Stat. § 971.14, nor did it limit commitment periods based on the number of offenses, as it did in Wis. Stat. § 973.09. Instead, it unambiguously based NGI commitment periods on the "maximum term" of confinement in prison "that could be imposed on an offender convicted of the same [offenses]," enhanced by "any applicable penalty enhancement statutes" and reduced by "the [criminal sentence] credit provisions of s. 973.155." § 971.17(1)(a), (b), (d). As the court of appeals explained in C.A.J., the legislature has plainly demonstrated the ability to limit the use of consecutive NGI commitments. 148 Wis. 2d at 140. In § 971.17, it declined to do so, and we must give effect to the legislature's choice. See Kalal, 271 Wis. 2d 633, ¶44 ("We assume that the legislature's intent is expressed in the statutory language."); Milwaukee J. Sentinel v. City of Milwaukee, 2012 WI 65, ¶¶36-37, 341 Wis. 2d 607, 815 N.W.2d 367 (explaining that "the legislature knew how to draft [different] language" in a statute, and the court "must respect the text" as written); United Am., LLC v. DOT, 2021

14

WI 44, ¶¶15-16, 397 Wis. 2d 42, 959 N.W.2d 317 (comparing the text of two statutory provisions and noting that the "legislature knows how" to write different statutory language).

¶25  A circuit court's authority to impose consecutive NGI commitment periods is not affected by the existence of separate orders.[9]  In this case, Yakich's five-year NGI commitment was set forth in two orders.  In his first case, involving bail jumping and phone harassment, he was ordered to three years of NGI commitment.  In his second case, involving two counts of bail jumping, he was ordered to two years of NGI commitment.[10]  Although the offenses at issue were not included in a single criminal charge and thus the NGI commitments were separated into two orders, that does not alter Wis. Stat. § 971.17's language permitting consecutive NGI commitments.  There is no indication in § 971.17 that periods of NGI commitment vary depending on whether charges are brought under one or more criminal complaints.  In fact, there may be victims and crimes that occur over the course of years, and

---

[9] Yakich does not appear to dispute that circuit courts can impose consecutive NGI commitment periods for multiple counts included in the same case.  In briefing, he contended that Wis. Stat. § 971.17 "arguably . . . authorizes the court to calculate the overall commitment period in [a single] case based on consecutive terms of confinement for each count in that case."

[10] The parties do not dispute that these orders were well within the statutory range for confinement had Yakich been criminally sentenced.  The maximum term of confinement for a Class H felony, including felony bail jumping to which Yakich pleaded NGI on three counts, is three years.  See Wis. Stat. § 946.49(1)(b); Wis. Stat. § 973.01(2)(b)8.  Had Yakich not been found NGI, he could have received a sentence of at least nine years of confinement.

in distinct factual circumstances.  It is entirely possible that individuals requiring NGI treatment can be subject to multiple commitment orders, perhaps from different courts at different times.  Circuit courts retain discretion to impose consecutive NGI commitments, whether the commitments are mandated in the same order or mandated in separate orders.  Yakich's total commitment period of five years, set forth in two orders, was appropriate.[11]

### B.  Yakich's Arguments On Appeal

¶26  Yakich makes several arguments in favor of his position on appeal.  First, he accurately notes that Wis. Stat. § 971.17 does not explicitly state that circuit courts may run NGI commitments consecutively.  The court of appeals noted this fact in C.A.J.  See C.A.J., 148 Wis. 2d at 139 (explaining that "the statute's language does not specifically indicate whether the maximum term of commitment may be based on consecutive terms").  It did not impact C.A.J. when it was decided, and it does not impact the analysis now.  The plain text of the statute ties NGI commitment periods to the length of confinement that would have occurred if the defendant were not NGI.  § 971.17(1).  Criminal terms of confinement can run consecutively, and so can NGI commitment terms.  If the legislature wanted to limit NGI

---

[11] This does not necessarily mean that Yakich will be institutionalized for five years.  "[A] defendant who succeeds on an NGI defense and is committed may file a petition for conditional release every six months, and if on conditional release, may file a petition to terminate the underlying order of commitment." Fugere, 386 Wis. 2d 76, ¶29 (citing Wis. Stat. § 971.17(4), (5) (2015-16)).

16

commitment in a way that it did not similarly limit criminal sentencing, it could have delineated the length of commitment for multiple offenses, as it did for probationary terms. Wis. Stat. § 973.09(2). Alternatively, it could have explicitly limited commitment periods to the maximum sentence the circuit court could have imposed for the most serious offense, as it did with competency proceedings. Wis. Stat. § 971.14(5). The plain text of § 971.17 supports the conclusion that circuit courts may impose consecutive NGI commitment periods.

¶27 Yakich also cites court of appeals decisions holding that terms of probation and juvenile dispositions cannot run consecutively. See State v. Wolfe, 2001 WI App 136, ¶15, 246 Wis. 2d 233, 631 N.W.2d 240 ("[T]he concept of consecutive sentences is foreign in the context of juvenile adjudications and dispositions."); State v. Schwebke, 2001 WI App 99, ¶29, 242 Wis. 2d 585, 627 N.W.2d 213 ("[W]e have repeatedly held that probation cannot be made consecutive to probation."). Yakich argues that the same logic should apply to NGI commitments. Nonetheless, the text of the probation statute, Wis. Stat. § 973.09(2), explicitly defines and limits the length of probationary terms when an individual is convicted of multiple offenses. Section 973.09 is readily distinguishable from Wis. Stat. § 971.17. Further, "[a]lthough the juvenile system is similar in some respects to the criminal system, we have specifically rejected an exact equation of institutional placement of a juvenile with the incarceration of an adult." E.C. v. DHSS, 142 Wis. 2d 906, 918, 420 N.W.2d 37

17

(1988). That is very different from § 971.17, which by its terms ties the length of NGI commitments to maximum terms of criminal incarceration.

¶28 We will not opine on the correctness of the decisions cited by Yakich. It suffices to note that probation and juvenile dispositions are distinguishable and not at issue in this case; Wis. Stat. § 971.17 provides circuit courts authority to impose consecutive NGI commitments.

¶29 Yakich targets his argument more narrowly and cites a court of appeals decision that prohibited criminal sentences from being run consecutively to NGI commitments. See State v. Harr, 211 Wis. 2d 584, 587-88, 568 N.W.2d 307 (Ct. App. 1997). The court of appeals in Harr interpreted Wis. Stat. § 973.15(2) (1995-96), which allows circuit courts to impose criminal sentences "consecutive to any other sentence." Id. The court of appeals held that because an NGI commitment was not a "sentence," § 973.15 did not permit a circuit court to impose a criminal sentence consecutive to the commitment. That analysis is not relevant to the question at issue in this case. Whether a circuit court may impose a criminal sentence consecutively to an NGI commitment under § 973.15 has simply no bearing on whether a circuit court may impose consecutive NGI commitments under Wis. Stat. § 971.17.

¶30 Finally, Yakich argues that the court of appeals decision in C.A.J. is no longer good law because the legislature has amended Wis. Stat. § 971.17 several times since C.A.J. was decided. At the time C.A.J. was decided, § 971.17 stated:

18

When the maximum period for which a defendant could have been imprisoned if convicted of the offense charged has elapsed, subject to s. 53.11 and the credit provisions of s. 973.155, the court shall order the defendant discharged subject to the right of the department to proceed against the defendant under ch. 51. If the department does not so proceed, the court may order such proceeding.

§ 971.17(4) (1987-88).

¶31 Like it does now, Wis. Stat. § 971.17 when C.A.J. was decided based the maximum time in which a defendant could be subject to NGI commitment to the maximum term of criminal imprisonment. At that time, the maximum term of criminal imprisonment included the possibility of consecutive terms. C.A.J., 148 Wis. 2d at 140. There is no dispute that remains true today.[12] See Wis. Stat. § 973.15(2). Furthermore, we are not bound by court of appeals decisions. As the state's highest court, we interpret legal questions independently. See State v. Lira, 2021 WI 81, ¶45, 399 Wis. 2d 419, 966 N.W.2d 605 ("While respecting court of appeals precedent is an important consideration, it is not determinative."). To the extent that § 971.17 may have changed since C.A.J., applying de novo review, the logic underlying the court of appeals decision nonetheless remains convincing.

---

[12] In fact, the language included in Wis. Stat. § 971.17 at the time of C.A.J. is almost identical to the language included in the statute today. Compare § 971.17(4) (1987-88) (limiting NGI commitment to "the maximum period for which a defendant could have been imprisoned if convicted of the offense charged"), with § 971.17(1) (2017-18) (stating that NGI commitment periods must be based on "the maximum term of imprisonment [or confinement in prison] that could be imposed against an offender convicted of the same felony [or misdemeanor]").

Independently interpreting § 971.17, we agree with C.A.J.'s reasoning.

¶32 Yakich contends that the statutory history of Wis. Stat. § 971.17 indicates that the legislature has rejected the reasoning in C.A.J. After C.A.J. was decided, the legislature amended § 971.17 to allow circuit courts to commit NGI defendants

> for a specified period not exceeding two-thirds of the maximum term of imprisonment that could be imposed under s. 973.15(2) against an offender convicted of the same crime or crimes, including imprisonment authorized by ss. 161.48, 939.62, 939.621, 939.63, 939.64, 939.641 and 939.645 and other penalty enhancement statutes, as applicable, subject to the credit provisions of s. 973.155.

1989 Wis. Act 334, § 5 (emphasis added).

¶33 Beginning in the late 1990s, Wisconsin transitioned to automatic bifurcated sentences under Truth-in-Sentencing laws.[13] Replacing the more indeterminate system of parole, under Truth-in-Sentencing, circuit courts were "required to impose a bifurcated sentence consisting of a term of confinement in prison followed by a term of extended supervision." State v. Stenklyft, 2005 WI 71, ¶¶16-17, 281 Wis. 2d 484, 697 N.W.2d 769; see Wis. Stat. § 973.01. As part of this reform, the legislature in 2001

---

[13] Wisconsin enacted Truth-in-Sentencing in two phases. "The first phase, TIS-I, was enacted in June 1998 and applied to offenses committed on or after December 31, 1999. See 1997 Wis. Act 283. The second phase, TIS-II, was enacted in July 2002 and became effective February 1, 2003. See 2001 Wis. Act 109." State v. Stenklyft, 2005 WI 71, ¶16, 281 Wis. 2d 484, 697 N.W.2d 769 (quoting State v. Gallion, 2004 WI 42, ¶7 n.3, 270 Wis. 2d 535, 678 N.W.2d 197)). Bifurcated sentencing was enacted in the first phase. Id.

amended § 971.17 to tie NGI commitments for felonies committed after July 2002 (and subject to Truth-in-Sentencing) to "the maximum term of confinement in prison that could be imposed," i.e., the confinement portion of a bifurcated sentence. § 971.17(1)(b). The legislature kept the original language for NGI commitments based on felonies committed prior to July 2002 as well as misdemeanors; felonies subject to life imprisonment remained subject to lifetime NGI commitment. See, e.g., § 971.17(1)(a) ("[T]he court shall commit the person to the department of health services for a specified period not exceeding two-thirds of the maximum term of imprisonment that could be imposed . . . .").

¶34 Yakich points out that the legislature removed the reference to Wis. Stat. § 973.15 when it made its reforms in 2001. Wisconsin Stat. § 971.17 no longer contains the language "under s. 973.15(2)" in the portion of the statute setting the maximum length of NGI commitment.

¶35 Yet it is well accepted that "[w]hen the legislature enacts a statute, it is presumed to act with full knowledge of the existing laws." Hoffer Props., LLC v. DOT, 2016 WI 5, ¶35, 366 Wis. 2d 372, 874 N.W.2d 533. C.A.J. provided thorough and convincing analysis on statutory language contained in Wis. Stat. § 971.17, and the version in existence at the time of C.A.J. did not materially differ from the version of the statute enacted after 2001, namely neither cross references the criminal sentencing statute. Section 971.17 was changed in 1989 to include explicit statutory cross references to Wis. Stat. § 973.15, but, even after

21

1989, the statute continued to include language tying NGI commitment to the length of criminal sentences. When the explicit cross reference was removed in 2001, the legislature could have accompanied the 2001 changes with an express statement that NGI commitments must run concurrently, or other amendments that would serve to prohibit consecutive commitment periods. See, e.g., Wis. Stat. § 971.14(5) (stating that commitment to obtain competency cannot extend longer than "a period not to exceed 12 months, or the maximum sentence specified for the most serious offense with which the defendant is charged, whichever is less"); see also Czapinski v. St. Francis Hosp., Inc., 2000 WI 80, ¶¶17-23, 236 Wis. 2d 316, 613 N.W.2d 120 (holding that newly imposed limitations on medical malpractice damages did not implicitly repeal the decision of "[n]umerous Wisconsin courts" limiting the class of individuals entitled to recover for loss of society and companionship in medical malpractice suits, noting the lack of express language to the contrary); Strenke v. Hogner, 2005 WI 25, ¶28, 279 Wis. 2d 52, 694 N.W.2d 296 (reiterating that legislative enactments are made in the context of caselaw and reasoning that changes in the statutory proof of intent for punitive damages did not alter prior cases interpreting the meaning of intent). Instead, the legislature chose to retain language largely tracking the statute interpreted in C.A.J., which, by 2001, had become accepted jurisprudence in Wisconsin.

¶36 While statutory history can be helpful when interpreting the meaning of a statute, in this case the legislature did not

22

enact the substantial change Yakich advances through the removal of a Wis. Stat. § 973.15 cross reference. State v. Williams, 2014 WI 64, ¶17, 355 Wis. 2d 581, 852 N.W.2d 467. With knowledge of existing caselaw, the legislature reverted Wis. Stat. § 971.17 to the language interpreted by the court of appeals in C.A.J. In so doing, the legislature made no express statement or change in the functioning in the statute to override decades of accepted Wisconsin jurisprudence.[14] Wisconsin Stat. § 971.17, as it did when C.A.J. was decided, permits consecutive NGI commitment terms.

## IV. CONCLUSION

¶37 In two separate cases, Yakich pleaded guilty to three counts of bail jumping and one count of phone harassment. The circuit court accepted Yakich's pleas in both cases at the same hearing. After the parties agreed that Yakich was NGI for all four of his offenses, the court ordered a five-year commitment period. In so doing, the circuit court ordered a two-year term of

---

[14] Yakich devotes much of his energy to the statutory history argument. Instead of the dramatic legal shift Yakich attempts to ascribe to the 2001 change, the statutory history is better read as a reform-minded effort of clarifying and systematizing NGI commitments after the new regime of Truth-in-Sentencing was passed. The legislature removed numerous other cross references in Wis. Stat. § 971.17, outside of Wis. Stat. § 973.15(2). It also removed citations to all other penalty provisions, including Wis. Stat. §§ "161.48, 939.62, 939.621, 939.63, 939.64, 939.641 and 939.645." As part of this clean-up endeavor, the legislature clarified that felonies committed prior to Truth-in-Sentencing have NGI commitments based on "two-thirds of the maximum term of imprisonment that could be imposed," and felonies committed after Truth-in-Sentencing have NGI commitments based on "the maximum term of confinement in prison that could be imposed" for a bifurcated sentence. § 971.17(1)(a), (b).

23

commitment for one of Yakich's cases and a three-year term of commitment for the second case. The commitment periods were ordered to run consecutively.

¶38 On appeal, Yakich argues that the circuit court's two commitment orders must run concurrently and cannot run consecutively. Nonetheless, we hold that Wis. Stat. § 971.17 provides circuit courts the statutory authority to impose consecutive periods of NGI commitment. Because the circuit court properly exercised its authority to impose consecutive NGI commitment periods, the circuit court and the court of appeals are affirmed.

*By the Court.*—The decision of the court of appeals is affirmed.

¶39 REBECCA FRANK DALLET, J. *(dissenting).* Defendants who are found not guilty by reason of mental disease or defect (NGI) are by definition not guilty. See Wis. Stat. §§ 971.165(3)(b) and 971.17. For this reason, we have repeatedly emphasized that NGI commitments are not criminal sentences. See State v. Fugere, 2019 WI 33, ¶29, 386 Wis. 2d 76, 924 N.W.2d 469; State v. Szulczewski, 216 Wis. 2d 495, ¶7 n.3, 574 N.W.2d 660 (1998); see also State v. Harr, 211 Wis. 2d 584, 587, 568 N.W.2d 307 (Ct. App. 1997). The majority's holding that circuit courts may impose consecutive NGI commitments is contrary to this basic premise, unsupported by the text and structure of § 971.17, and will likely be unworkable in practice. I therefore respectfully dissent.

¶40 When a defendant is found NGI, the circuit court must "commit the person to the department of health services" for a specified period. See § 971.17(1). Circuit courts have some discretion to determine the appropriate period, but the commitment cannot exceed the maximum time periods specified in § 971.17(1). Different offenses carry different maximum commitment periods, depending on whether the offense is a felony or misdemeanor and whether the offense occurred before or after July 30, 2002. See generally id. For felonies committed after July 30, 2002, § 971.17(1)(b) authorizes circuit courts to commit the defendant for "a specified period not exceeding the maximum term of confinement in prison that could be imposed" on a person convicted of the same crime, after accounting for any applicable penalty enhancements and sentencing credit. For misdemeanors, the

1

commitment period is limited to "a specified period not exceeding two-thirds of the maximum term of imprisonment that could be imposed against any offender convicted of the same misdemeanor," subject to the same penalty-enhancement and sentencing-credit adjustments as felonies. § 971.17(1)(d).[1]

¶41 Applying § 971.17 is relatively easy when the defendant pleads NGI to one charge in one case. Yakich's case, however, is more complicated because he pleaded NGI to four charges in two cases: one count of felony bail jumping and one count of misdemeanor phone harassment in one case; two counts of felony bail jumping in a separate case.[2] The circuit court handled this

---

[1] There is no relevant distinction for this case between terms of "confinement" for felonies and terms of "imprisonment" for misdemeanors.

[2] In general, NGI proceedings are split into a guilt phase and a responsibility phase. See Fugere, 386 Wis. 2d 76, ¶¶26-27. Admitting guilt in the "guilt phase" does not mean the same thing as pleading guilty. In the NGI context, a defendant "is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect the person lacked substantial capacity either to appreciate the wrongfulness of his or her conduct or conform his or her conduct to the requirements of law." Wis. Stat. § 971.15(1). By contrast, in a criminal case, a defendant who pleads guilty admits to all the elements of the charged offense, including criminal responsibility. This distinction animates Wis. Stat. § 971.06(1)(d), which allows a defendant to plead NGI and to accompany that NGI plea with a plea of not guilty. An NGI plea that is not accompanied by a plea of not guilty "admits that but for lack of mental capacity the defendant committed all the essential elements of the offense charged." Id. Section 971.06(1)(d) does not allow a defendant to plead guilty and then plead NGI.

2

complication by entering two separate commitment orders at the same time, one in each case. In the first case, the circuit court committed Yakich for two years for one count of felony bail-jumping and the phone-harassment misdemeanor. In the second case, Yakich was committed for three years on the other two counts of felony bail jumping. The circuit court specified that the orders would run consecutively for a total of five years——longer than Yakich could have been imprisoned for any one of the crimes to which he pleaded NGI. See Wis. Stat. § 973.01(2)(b) (specifying that the maximum term of confinement in prison for bail jumping is three years); Wis. Stat. § 939.51(3) (providing for a maximum term of 90 days' imprisonment for phone harassment). In reviewing those orders, the court of appeals implied that imposing consecutive commitments was not permitted by § 971.17. See State v. Yakich, Nos. 2019AP1832 & 2019AP1833, unpublished op., ¶¶23-24 (Wis. Ct. App. Jan. 14, 2021). Nevertheless it affirmed the circuit court, reasoning that the five-year commitment term was allowable under State v. C.A.J., 148 Wis. 2d 137, 434 N.W.2d 800 (Ct. App. 1988).

¶42 In C.A.J., the court of appeals addressed how to calculate the maximum length of a commitment when a defendant is found NGI on multiple counts in the same case. It did so by analyzing the then-current version of § 971.17, which provided

---

Although the circuit court transcript reflects that Yakich pleaded "guilty" and then pleaded NGI, the so-called "guilty" plea was an admission that but for his lack of mental capacity, he committed all the essential elements of the offense. See § 971.06(1)(d). Yakich pleaded NGI, he did not plead guilty. Accordingly, that is how I refer to his plea throughout this opinion.

that NGI commitments could not exceed "the maximum period for which a defendant could have been imprisoned if convicted of the offense charged." See § 971.17(4) (1987-88). The question was whether, in a multiple offense case, the "maximum period" was equal to the maximum period of imprisonment based on consecutive sentences or the maximum period of imprisonment for only the most serious single offense. The court of appeals opted for the former, holding that the maximum commitment period under § 971.17 should be calculated by adding together the maximum terms of imprisonment for each offense, assuming those terms ran consecutively. C.A.J., 148 Wis. 2d at 139-40. C.A.J. did not hold, however, that consecutive NGI commitments are permitted by § 971.17; only that the maximum length of an NGI commitment was equal to the maximum consecutive sentence the defendant could have received had he been convicted. Put another way, in a multiple-offense case, C.A.J. allows for a single commitment order that is no longer than the amount of time the defendant could have been imprisoned had he been convicted and sentenced to consecutive terms. See Yakich, unpublished slip op., ¶23.

¶43 As the court of appeals pointed out in this case, there is "more than [a] semantic" difference between the approach adopted in C.A.J. and allowing consecutive NGI commitments. Id., ¶24. The majority, however, ignores the difference altogether. It holds that § 971.17 authorizes consecutive commitments, while stating that it "agree[s] with C.A.J.'s reasoning." Majority op., ¶31. This unresolved tension appears to stem from the majority's mischaracterization of C.A.J. as holding that "consecutive NGI

4

commitment periods are appropriate, just as consecutive terms of confinement are appropriate in criminal sentencing." See id., ¶13; see also id. ¶14. But, as explained above, that's not what C.A.J. held.

¶44 Moreover, the majority's misreading of C.A.J. is a symptom of a bigger problem: it wrongly treats NGI commitments as if they were criminal sentences. Indeed, the majority erroneously concludes that by "cit[ing] and rel[ying] on the criminal sentencing system to define the lengths of NGI commitments," the legislature thus incorporated into the NGI context all other aspects of our approach to criminal sentencing. See majority op., ¶18. And because the "criminal sentencing system" allows criminal sentences to run consecutively, see § 973.15(2)(a), the majority concludes that NGI commitments can do the same.

¶45 That approach is contrary to our precedent, which has established in no uncertain terms that an NGI commitment is not a criminal sentence. See Szulczewski, 216 Wis. 2d 495, ¶7 n.3; see also Fugere, 386 Wis. 2d 76, ¶29. For that reason, the criminal sentencing statutes apply in the NGI context only as specified in § 971.17. See Grobarchik v. State, 102 Wis. 2d 461, 467, 307 N.W.2d 170 (1981) ("If the authority to fashion a particular criminal disposition exists, it must derive from the statutes."). Section 971.17 specifies that the appropriate length of an NGI commitment is determined by considering the "maximum term of confinement in prison" for felonies, the "maximum term of imprisonment" for misdemeanors, applicable penalty enhancers, and the sentencing-credit provisions of Wis. Stat. § 973.155. Each of

5

these sentencing considerations are defined by statute, and do not reference or otherwise incorporate the concept of consecutive sentencing, which is separately authorized by § 973.15. Because neither § 971.17 nor any other statute authorizes or even mentions consecutive NGI commitments, circuit courts may not impose consecutive commitments. See Grobarchik, 102 Wis. 2d at 467.

¶46 This conclusion is consistent with how courts treat probation and juvenile dispositions, both of which are not criminal sentences and therefore cannot run consecutively. See State v. Schwebke, 2001 WI App 99, ¶29, 242 Wis. 2d 585, 627 N.W.2d 213 ("[P]robation cannot be made consecutive to probation."); In re Commitment of Wolfe, 2001 WI App 136, ¶15, 246 Wis. 2d 233, 621 N.W.2d 240 ("[T]he concept of consecutive sentences is foreign in the context of juvenile adjudications and dispositions."). The majority attempts to distinguish probation from NGI commitments by pointing out that, unlike § 971.17, the probation statute specifies what a circuit court should do when a probationer is convicted of more than one offense. See, e.g., Wis. Stat. § 973.09(2)(a)2. But the text of § 973.09 makes clear that courts may only extend the original term of probation, not run probation terms consecutively. For example, § 973.09(2)(a)2. specifies that "[i]f [a] probationer is convicted of not less than 2 nor more than 4 misdemeanors at the same time, the maximum original term of probation may be increased by one year." The statute contains no language authorizing circuit courts to impose consecutive periods of probation. Likewise, ch. 938, which governs juvenile proceedings, says nothing about authorizing consecutive

6

juvenile dispositions.  The majority offers no reason why the legislature's silence about consecutive commitments in § 971.17 should somehow have a different result.

¶47  The statutory history of § 971.17 provides further evidence for why the majority's interpretation is wrong.  In 1989, the legislature amended § 971.17 to allow NGI commitments to run "for a specific period not exceeding two-thirds of the maximum term of imprisonment that could be imposed under s. 973.15(2) against an offender convicted of the same crime or crimes."  1989 Wis. Act 334, § 5 (emphasis added).  In 2001, however, the legislature removed the reference to § 973.15 when the state adopted Truth-in-Sentencing.  2001 Wis. Act 109, §§ 1106-07.  That deletion suggests that the legislature meant to remove from the NGI commitment-period calculation any consideration of consecutive criminal sentences.  See, e.g., DNR v. City of Waukesha, 184 Wis. 2d 178, 189-90, 515 N.W.2d 88 (1994), abrogated on other grounds by State ex rel. Auchinleck v. Town of LaGrange, 200 Wis. 2d 585, 547 N.W.2d 587 (1996).

¶48  The majority's alternative explanation again falls back on its misreading of C.A.J.  It contends that the legislature's removal of this explicit cross-reference to § 973.15 was simply an effort to "revert[]" to the "accepted Wisconsin jurisprudence" that arose following C.A.J.  See majority op., ¶36.  But because C.A.J. did not hold that consecutive NGI commitments are permitted, what the majority claims as "accepted jurisprudence" never existed.  Moreover, if § 971.17 already authorized consecutive NGI commitments at the time C.A.J. was decided, then it is unclear why

7

the legislature would bother to add an explicit reference to § 973.15 one year later.

¶49  The majority offers one more hypothesis for why removing the cross-reference to § 973.15 has no effect on how we should interpret § 971.17.  It speculates that the legislature's deletion of the cross-reference "is better read as" part of a "reform-minded" "clean-up endeavor" to clarify and systematize NGI commitments after the adoption of Truth-in-Sentencing.  See majority op., ¶36 n.14.  It is true that the cross-reference to § 973.15 was deleted at the same time as other changes associated with Truth-in-Sentencing.  See 2001 Wis. Act 109, §§ 1106-07 (removing the citation to § 973.15 from § 971.17 and adding language to distinguish between NGI commitments for offenses committed before and after the effective date of Truth-in-Sentencing).  But the majority does not explain why implementing Truth-in-Sentencing has anything to do with the removal of a reference to § 973.15.  Keeping the citation to § 973.15 in § 971.17 wouldn't cause any tension with Truth-in-Sentencing.  Rather, keeping the cross-reference after adopting Truth-in-Sentencing would simply make clear that C.A.J. remained good law——that the maximum length of an NGI commitment should be calculated based on the maximum consecutive prison sentences that could be imposed for the same conduct.  The majority's conjecture about the legislature's intent would render the legislature's textual changes meaningless.

¶50  The rest of the majority's "clean-up" theory also fails because it doesn't explain the legislature's other changes.  In

8

particular, it can't account for why the legislature removed the reference to § 973.15, but kept the references to the sentencing-credit statute, § 973.155. <u>See, e.g.</u>, § 971.17(1)(a), (b). By the majority's logic, the legislature's use of the terms "maximum term of confinement in prison" and "maximum term of imprisonment" in § 971.17 was enough to import Wisconsin's criminal sentencing statutes wholesale into the NGI commitment context. If that were the case, then no cross-reference would be necessary to apply the rules for sentencing credit to NGI commitments.

¶51 To be clear, the statutory history of § 971.17 is ambiguous at best. On the one hand, it is reasonable to conclude that the legislature did not intend for its deletion of the cross-reference to § 973.15 to make a consequential change to the method of calculating the maximum length of an NGI commitment, particularly when that change was part of an act largely focused on implementing Truth-in-Sentencing. Moreover, if the legislature's intention was to change the law, it seems odd that it also removed the § 973.15 cross-reference from § 971.17(1)(a), which applies to felonies committed before the effective date of Truth-in-Sentencing. But on the other hand, the legislature's removal of any reference to § 973.15 has to mean something, and it is hard to see what it means other than to prohibit courts from considering consecutive criminal sentences when calculating the maximum time a person can be committed after being found NGI. Those ambiguities aside, at least one thing is clear about the statutory history of § 971.17: it does not support the majority's conclusion that consecutive NGI commitments are permitted.

9

¶52  The final reason for rejecting the majority's conclusion is that it creates tensions between § 971.17(1) and the provisions of § 971.17 governing the conditional release of individuals and the eventual termination or expiration of commitments.  See State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110 (directing courts to construe statutory text in context and to avoid "unreasonable results").  Individuals who are subject to NGI commitments need not serve the entire commitment period.  For example, under § 971.17(4)(a), a person committed for institutional care "may petition the committing court to modify its order by authorizing conditional release if at least 6 months have elapsed since the initial commitment order was entered."  In this case, the same circuit court imposed consecutive NGI commitments in two cases at the same time.  But as the majority points out, "individuals requiring NGI treatment can be subject to multiple commitment orders, perhaps from different courts at different times."  Majority op., ¶25.  Thus, under the majority's holding, if an individual is subject to consecutive commitment orders from different judges, it is unclear whether the person has to petition one court or both for conditional release.

¶53 There is a similar problem with § 971.17(5), which allows an individual on conditional release to "petition the committing court to terminate the order of commitment" if certain conditions are met.  Even if an individual does not petition for conditional release or termination, "upon the expiration of a commitment order under sub. (1), the court shall discharge the

10

person." § 971.15(6)(b) (adding that the person's discharge is subject to the right of the Department of Health Services or a county health department to file a commitment petition under ch. 51). How does a court comply with this requirement if there is a consecutive commitment order in place? The majority provides no guidance for how the lower courts should deal with these and other questions raised by its erroneous conclusion.

¶54 All of the majority's errors are rooted in its neglect of the basic premise that NGI commitment orders are not criminal sentences. The majority's conclusion that § 971.17 authorizes consecutive commitment orders is not only contrary to that premise, it is unsupported by the statute's text, its history, and its interpretation in C.A.J. The majority also creates tension in the text of § 971.17 that may result in confusion regarding how lower courts should apply the statute. Accordingly, I respectfully dissent.

¶55 I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.

11